(78 Misc. Rep. 18.)

PEOPLE v. ARNSTEIN.

(Court of General Sessions, New York County. October, 1912.)

1. INDICTMENT AND INFORMATION (§ 148*)—DEMURRER—PARTICULAR COUNT.
Where an objection is taken to a demurrer to a single count of an indictment, instead of one to the entire indictment, such demurrer will be treated as proper and sufficient to warrant consideration by the court.
[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 495; Dec. Dig. § 148.*]

2. LARCENY (§ 2*)—ELEMENTS OF OFFENSE—STATUTORY PROVISIONS.
Penal Law (Consol. Laws 1909, c. 40) § 1290, defining larceny, is to be construed in the light of the rule and reason of the common law, as well as of the statutes in force at its enactment.
[Ed. Note.—For other cases, see Larceny, Cent. Dig. § 2; Dec. Dig. § 2.*]

3. CRIMINAL LAW (§ 97*)—JURISDICTION—PLACE OF OFFENSE.
The common-law rule was that concurrent jurisdiction exists in the place of the starting and consummation of an offense, provided the offense was indictable in the place of consummation.
[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 177–191; Dec. Dig. § 97.*]

4. FALSE PRETENSES (§ 6*)—ELEMENTS OF OFFENSE—NECESSITY FOR FALSE TOKEN.
Obtainment of money by false representation or pretense, where not obtained by means of a false token, was not criminal at common law.
[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 4; Dec. Dig. § 6.*]

5. INDICTMENT AND INFORMATION (§ 63*)—FORM OF ALLEGATIONS—CONCLUSIONS OR MATTERS OF FACT—"FELONIOUSLY."
The use of the word "feloniously," to characterize the obtainment of money in another state, expresses the mere conclusion of the pleader, and purports that the obtainment was with criminal intent, and is not an allegation that the facts stated were criminal, either under the common law as interpreted in the state in question, or the equivalent to a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

setting forth of a provision of a statute of that state making the act criminal; the presumption being, in the absence of such allegation, that the common law prevailed.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 185; Dec. Dig. § 63.*

For other definitions, see Words and Phrases, vol. 3, pp. 2730–2735.]

6. FALSE PRETENSES (§ 29*)—INDICTMENT—SUFFICIENCY.

Where, in a count of an indictment charging larceny in obtaining money from complainant in another state by false representation or pretense, under Penal Law (Consol. Laws 1909, c. 40) § 1290, the use of no false token is alleged, and it is not alleged that the common law did not prevail in the other state when the accused obtained the money, it will be presumed that no criminal act was committed in the other state, and that the representation or pretense in New York was no part of the crime, and a demurrer to the count will be sustained.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. §§ 34–36; Dec. Dig. § 29.*]

7. FALSE PRETENSES (§ 2*)—STATUTES—CONSTRUCTION—PARI MATERIA.

Penal Code (Consol. Laws 1909, c. 40) § 1930, subd. 1, does not require that the words "within the state" and "in whole or in part" be read into section 1290, defining larceny.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 2; Dec. Dig. § 2.*]

Nicholas Arnstein is indicted for larceny. Heard on demurrer to indictment. Sustained.

O'Gorman, Battle & Marshall, of New York City (George Gordon Battle, of New York City, of counsel, and Raymond H. Sarfaty, of New York City, on the brief), for demurrant.

Charles S. Whitman, Dist. Atty., of New York City (Robert S. Johnstone and James A. Delehanty, Asst. Dist. Attys., both of New York City, of counsel), for the People.

CRAIN, J.. The indictment contains two counts; the first charging the defendant with the crime of larceny by means of false representation or pretense, and the second charging him with larceny in the common-law form.

[1] The original demurrer as filed was to the entire indictment. On the oral argument the learned assistant district attorney called the attention of counsel for the demurrant to the presence of this second count. The latter then asked permission to file an amended demurrer limited to the first count, and, the assistant district attorney not objecting, such consent was granted. Thereafter the present amended demurrer, going alone to the first count in the indictment, was filed.

Although an indictment is in the criminal law what a complaint is in the civil law, and a comparison of what an indictment is required to contain with what a complaint is required to contain shows that the language of the Criminal and Civil Codes of Procedure in these regards is almost identical, the Code of Criminal Procedure contains no provision analogous to that in section 492 of the Code of Civil Procedure, which permits a defendant to demur to one or more separate causes of action, for there is no section of the Code of Criminal Pro-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cedure either permitting or forbidding in express terms the filing of a demurrer limited to a separate count in an indictment.

Section 323 of the Code of Criminal Procedure provides that a demurrer may be filed to an indictment where "the facts stated do not constitute a crime," section 275 that an indictment must contain "a plain and concise statement of the act constituting the crime, without unnecessary repetition," and section 279 that "the crime may be charged in separate counts to have been committed in a different manner, or by different means."

In the case at bar it is the right so given which has been exercised. In certain criminal actions it has been held that a demurrer interposed to a whole indictment containing more than one count is bad, if any count is good, while in other such actions demurrers to single counts have been held ineffective, where effective prosecution could be had under counts not demurred to. People v. Rice, 13 N. Y. Supp. 161;[1] People v. Willett, 102 N. Y. 251, 6 N. E. 301. In both classes of cases it may be said that the regularity and the permissibility of the interposition of a demurrer limited to a particular count in an indictment were assumed.

No objection has been taken on the score that the statute in terms makes no provision for a demurrer limited to a particular count, as distinguished from one to an entire indictment, or from one to each count in an indictment separately considered, and the course adopted in the case at bar in filing a demurrer limited to a single count in the indictment being in conformity to a more or less well-established mode of procedure, and having been made the law of this case so far as consent can make it so, such course is treated as proper, and the amended demurrer as sufficient to warrant consideration and decision by the court of the validity of the count in the indictment which it assails.

This first count, so demurred to, charges the demurrant, in conjunction with others, with the statutory crime of larceny by means of false representation or pretense. The indictment in such first count alleges that the defendant and others, all late of the county of New York, on August 19, 1911, feloniously entered into a conspiracy for the purpose of fraudulently dealing in the stock of a certain corporation, and of cheating and defrauding persons to whom they should sell shares of its stock, and to obtain money from such persons by false pretenses, and so deprive and defraud them of their property by obtaining it without consideration. It charges that at the time named they feloniously conspired by false pretenses to cheat and defraud William B. Shinks of property mentioned in the indictment and to appropriate the same to their own use, and that in pursuance and furtherance of such conspiracy they feloniously deliberated in the county of New York upon the defrauding of Shinks, and planned and arranged the commission of such fraud in a manner and by means to the grand jury unknown. It then charges that afterwards, in further

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 59 Hun, 616.

pursuance and furtherance of the conspiracy, they went from New York county to the city of Springfield, Mass., and there with like intent falsely pretended and represented to Shinks that a corporation called Chelan Consolidated Copper Company, having a capital stock of 1,200,000 shares, of the par value of $10 each, owned certain mining lands in the state of Washington, and that such lands were of great value, and exceeded in value the amount of such corporation's capital stock. It charges that they further falsely pretended that three of the defendants, other than the demurrant, were desirous of purchasing all of the then outstanding stock of such corporation, and had theretofore bought and were then buying large amounts of the same, and had theretofore paid and were paying large sums of money in the purchase of the same, and that certain certificates of the capital stock of the said corporation then held and owned by one of the defendants, other than the demurrant, were well worth the sum of $6 each, and that such defendant had paid $6 in money for each of such shares so held by him, and that the demurrant and another defendant had ascertained by whom such shares were owned.

The indictment further charges that certain of the defendants, other than the demurrant, in furtherance of such conspiracy and acting upon such deliberation, between the 15th day of August and the 19th day of August, 1911, in the county of New York, wrote and delivered for transmission to Shinks divers telegrams and letters, to be received by Shinks at Springfield, Mass., in which letters it was falsely pretended that certain of the defendants, other than the demurrant, were desirous of purchasing the shares so said to be owned by such other defendant, and to pay for the same, and would pay to Shinks $9 per share in cash upon the receipt of said certificates of stock. It then charges that Shinks, believing such false and fraudulent pretenses and representations, and being deceived thereby, was induced to deliver and did deliver at the city of Bridgeport, in the state of Connecticut, to certain of the defendants, including the demurrant, the sum of $15,000, lawful money of the United States, property of said Shinks. It then charges that such defendants, including the demurrant, feloniously and fraudulently received and obtained such moneys by color and aid of such false and fraudulent pretenses and representations, and appropriated such moneys to their own use.

The indictment then negatives the truth of such various representations, and alleges that they were in all respects utterly false and untrue, and that this was known to the defendants at the time of making them, and that by such means the defendants feloniously stole the moneys of Shinks, and that such larceny was committed in part in the county of New York, in part in the city of Springfield, Mass., and in part in the city of Bridgeport, Conn., and that some of the acts constituting such offense occurred in the county of New York, others in the city of Bridgeport, Conn., and others in the city of Springfield, Mass., against the form of the statute in such case made and provided, and against the peace of the people of the state of New York and their dignity.

The demurrant alleges as grounds of demurrer that it appears upon the face of such first count of the indictment that the grand jury by which it was found had no legal authority to inquire into the crime charged, by reason of its not being within the local jurisdiction of the county of New York, in that it appears upon the face of the said count that the crime charged was committed in the state of Connecticut; that such first count does not conform substantially to the requirements of sections 275 and 276 of the Code of Criminal Procedure; that it appears upon the face of such count that the crime therein charged does not constitute a crime in the state of New York, because it appears that such crime was committed in the state of Connecticut; that it appears on the face of such count that it contains matter which, if true, would constitute a legal bar to the prosecution of such crime, in that such count contains an allegation that the crime charged therein was committed in the state of Connecticut; that more than one crime is charged in the indictment within the meaning of sections 278 and 279 of the Code of Criminal Procedure; and that the indictment does not conform substantially to the requirements of sections 275 and 276 of such Code.

The demurrer urged, however, upon the court, but one of such alleged grounds of demurrer, namely, that challenging the sufficiency of the statements in the count assailed to allege the commission under the law of this state of the crime of larceny by false representation or pretense.

[2] The weight of authority in this state is that, where the crime of larceny by false representation or pretense has been committed, the pretense is to be regarded as a substantive part of the crime, and not merely as the means by which the crime was committed; and the question for decision is (a) whether section 1290 of the Penal Law, without regard to other statutory enactments, embraces a case like the one at bar, where the obtainment of property resulting from the false representation or pretense was had *without* the state; and (b) whether, if not broad enough to cover such a case, apart from other statutory enactment, the words *"within the state"* and *"in whole or in part,"* found in subdivision 1 of section 1930 of the Penal Law, should in effect be read *into* section 1290, and given the force and effect which they would have if found in such section, and if such section should therefore be construed as though reading:

"A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person * * * obtains from such possession by color or aid of fraudulent or false representation or pretense, or of any false token or writing *within the state in whole or in part*, * * * any money or personal property, * * * steals such property, and is guilty of larceny."

In other words, is such language in subdivision 1 of section 1930 to be construed as though it formed part of the definition of the crime of larceny as contained in section 1290 of the Penal Law, with the consequence that such definition so including such words makes crim-

inal as a larceny a false representation or pretense within the state where the resultant obtainment, as in the case at bar, was in *another* state?

Each of these branches of the question for decision must be answered in the negative, for reasons to be stated, and the demurrer as a consequence allowed. Section 1290 of the Penal Law, in common with all other provisions of that law, is to be interpreted in the light of the rule and reason of the common law, as well as in the light of the statutes in force at the time of its enactment.

[3] Broadly stated, the rule at common law was that concurrent jurisdiction exists in the place of the starting of the offense and in the place of its consummation, provided that the offense was indictable in the place of consummation. Under this rule the thing done in New York state, to be indictable, must at least have been part of a crime; that is to say, part of something indictable at the place of consummation. Apart from statutory provision to the contrary, where that done outside of the jurisdiction is not criminal where done—that is to say, at the place where done—that done in New York is not part of a crime.

[4] Obtainment of money by false representation or pretense, where not obtained by means of a false token, was not criminal at common law, and therefore not indictable, and such was the obtainment alleged in the first count of the indictment. There are no allegations in the indictment to show, if such be the fact, that the common law did not prevail in Connecticut at the time of the obtainment of the money.

[5] The use of the word "feloniously" to characterize the obtainment of the money in Connecticut expresses the mere conclusion of the pleader, and purports in this connection that the obtainment was with criminal intent. People v. Hartwell, 166 N. Y. 361, 366, 59 N. E. 929. It is not an allegation of fact equivalent to a pleading that the acts as set forth in the first count of the indictment were criminal either under the common law as interpreted by the courts of Connecticut, or the equivalent to a setting forth in the indictment of some provision of the Connecticut statute, if such there be, making such acts criminal, and the presumption, in the absence of any such allegation, is that the common law prevailed in Connecticut. Therefore the obtainment of the money must be presumed not to have been criminal in Connecticut, and, if not criminal in Connecticut, the representation or pretense in New York was not part of a crime.

[6] In the light of the circumstance that the obtainment in Connecticut is to be presumed to be lawful for the reasons heretofore stated, the fact that the indictment contains allegations of a conspiracy in New York county is immaterial; for, as is said by the Supreme Court of the United States in the case of American Banana Co. v. United Fruit Co., 213 U. S. 347, 29 Sup. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047:

"A conspiracy in this country to do acts in another jurisdiction does not draw to itself those acts and make them unlawful, if they are permitted by the local law."

As has been stated, obtainment of money by false representation or pretense in a case like the one at bar, where no false token was used, was not a crime at common law  It was not larceny under the Revised Statutes, and only became so under the provisions to that effect in the Penal Code, now re-enacted in the Penal Law.  It is therefore a statutory crime.  With respect to all statutory, as distinguished from common-law, crimes, the acts forbidden and punishable under our Penal Law must be construed as being forbidden to be done within the state, and to be only punishable where so done, except in those cases where the statute in terms enacts that they are criminal if done wholly or partly out of the state.   Such construction is required in part by the application of the rule that all legislation is prima facie territorial (Charles v. People, 1 N. Y. 180, 184; People v. Merrill, 2 Parker Cr. R. 590, 596; Ormes v. Dauchy, 82 N. Y. 443, 448, 37 Am. Rep. 583; American Banana Co. v. United Fruit Co., 213 U. S. 347, 357, 29 Sup. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047), and in part by the application of the maxim, "expressio unius est exclusio alterius."  This maxim is applicable, because (a) in the article in the Penal Law in which the crime of larceny is defined an instance is mentioned in which that crime is committable where the acts constituting it are done without the state (see Penal Law, § 1301); and (b) because the Penal Law respecting several other crimes in terms makes them committable, although done in whole or in part without the state.  Among such are certain offenses under articles 16, 54, 68, 72, 94, 130, and 188 of that law.

Section 1290 of the Penal Law, considered, therefore, apart from other statutory enactment, in the light of the rule and reason of the common law, and in the light of the principle of the prima facie territorial character of legislation, and in the light of the application of the maxim alluded to, is limited to those cases in which the acts therein forbidden are done within the state.

[7] The language found in subdivision 1 of section 1930 of the Penal Law heretofore alluded to cannot, for the following reasons, be read into section 1290 of that law, which defines the crime of larceny:

The place in the statute in which section 1930 of the Penal Law is found, coupled with the title of the article in which it is found, presents the first reason why it should not in effect be read into section 1290 of that law, or into any other part of the statute purporting to *define a crime.*

The Penal Law has three distinct objects, namely:  First, to specify the classes of persons capable of committing crime and liable to punishment therefor; secondly, to define the nature of the various crimes; and, thirdly, to prescribe the kind and measure of punishment to be inflicted for each.  Penal Law, § 20.

Before the adoption of the arbitrary, because alphabetical, rearrangement of the sections of the Penal Code now known as our Penal Law, and under the Penal Code, which it superseded, the provision of which section 1930 of the Penal Law is but a re-enactment, namely,

section 16 of the Penal Code, was found in a title entitled "Persons Punishable for Crimes." Manifestly, without intent to change the meaning, and merely for the sake of brevity, the corresponding article in the Penal Law was entitled "Punishment." Under both the Penal Code and Penal Law, the provision in question was, therefore, not found in any part purporting to define crimes in general or any crime in particular, but, on the contrary, in an article devoted to a description of the classes of persons punishable for crime.

Section 1930 in its entirety is the correlative of *all* the sections of the Penal Law *taken together* which define crime. Such sections *define* crimes, and section 1930 enacts the punishability of those who commit them. Its scope is no broader than the sum total of such crime-defining sections. Each of its subdivisions has some correlative among such crime-defining sections. Thus subdivisions 1 and 3 have their correlative in that portion of section 2 defining what constitutes a principal, subdivision 2 has its correlative in sections 1301 and 1308, subdivision 4 has its correlative in subdivision 3 of section 1250, and subdivision 5 has its correlative in sections 581, 735, 1047, 2096, and similar sections. In no instance is the liability to punishment enacted by any subdivision of section 1930 broader than the provisions of the correlatives of such section.

If subdivision 1 of section 1930 were interpreted in a manner to validate the assailed count in the indictment, it would be because construed as broadening the definition of larceny as contained in the Penal Law. Its construction would thus be differentiated from that of necessity given to every other subdivision of the same section, and in a statute originally noteworthy for its orderly arrangement it would present the anomaly of a misplaced provision.

The language of the subdivision itself presents the second reason why it should not in effect be read into section 1290 of the Penal Law, or into any other part of the statute purporting to define a crime. It assumes the commission of a crime and declares when punishability shall attach to its commission. The words *"in whole or in part"* are descriptive of the extent or degree of *participation,* not of the *locality* of commission.

Subdivision 1 of section 1930 of the Penal Law provides that a person shall be punishable who commits any "crime," whether he commits such crime in whole or in part within the state. To be punishable under that subdivision, he must answer to the description of one committing a "crime." When recourse is had to the general definition of a crime, as contained in the Penal Code, and now in the Penal Law, it is found that the definition is composed of two elements, namely: First, that it shall be an act or omission forbidden by law; and, secondly, that it shall be punishable in some one of specified ways. Penal Code, § 2; Penal Law, § 2. Before, therefore, a given act can be pronounced to be a crime, it must be established that it is forbidden by law, and, moreover, if committed since the Penal Law went into effect, that it is so forbidden by some provision of either the Constitution of the state, the Penal Law itself, or of some statute of this state not repealed by the Penal Law. This is not accomplished, where the act is

done in part in another jurisdiction, by merely pointing to a statute silent on the subject of locality, unless the statute be one defining what was at common law a crime and punishable as such, although partly done without the state.

An act or omission forming an element of a crime is not in itself a crime merely because it is such an element when separated from the other elements forming in conjunction with it the crime. It is only a crime, if it is something which, standing alone, is "forbidden" by our law and "punishable" under our law, either as constituting, when committed, the crime of an attempt to commit the crime of which it forms an element, or as constituting some other independent crime. A false representation or pretense may form an element in a crime, or under circumstances, perhaps, constitute the crime of an attempt to commit a certain crime; but it does not constitute the crime of larceny apart from an obtainment as the result of such false representation or pretense, and, moreover, an obtainment under circumstances which are forbidden and punishable and an obtainment outside of the jurisdiction of the state is not forbidden by our law, nor punishable by it, unless our law is to be given an extraterritorial force.

Because more than one element enters into the crime of larceny by false representation or pretense, that crime is particularly susceptible of being committed by a number of persons acting in conjunction, as in the case at bar. All such may participate in its commission, without any one committing it wholly, in the sense of personally doing everything connected with its commission, but in that sense committing it only partly; and this first subdivision of section 1930 of the Penal Law provides for the punishability of one who commits such a crime, whether wholly (that is to say, without others) or partly (that is to say, in conjunction with others). It is a provision in reinforcement of the statutory provision found in section 2 of the Penal Law that a person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent, is a principal. This meaning would be entirely plain if the provision read: "A person who commits * * * any crime, in whole or in part." The omitted words, namely, the words "within the state," are merely used in this subdivision contrastively to "without the state," as used in the next following subdivision, and to emphasize the distinction intended to be so made between such subdivisions.

The language of subdivision 1 may therefore be paraphrased as follows: A person is punishable within the state who within the state in whole commits any crime, and a person is also punishable within the state who within the state in part commits *any crime*. As stated, "in whole or in part" relate to the *commission*. They refer to the relation which the person bears to the forbidden and punishable act done— namely, to the crime. Commits in whole means commits in its entirety; commits in part means not in its entirety. The law knows no such thing as a *partial crime*. It does not punish as for partial crimes. It punishes those who commit crimes; that is to say, things forbid-

den by law.  The fact that this is so is emphasized by the provisions of the Penal Law, making under circumstances constituent elements in other crimes the independent crime of an attempt to commit the crime of which they form an element.  To repeat, subdivision 1 of section 1930 of the Penal Law presupposes the commission of a "crime." That done must be an act forbidden by and punishable under our law. "In whole or in part" do not refer to the *locus* of the commission but to the *extent or degree of participation in the commission.*

Section 1933 of the Penal Law contains a general provision that a person who commits an act without this state, which if committed within this state would be a crime, is punishable as if the act were committed within this state, provided that such act affects persons or property within this state, or the public health, morals, or decency of this state.  Penal Law, § 1933.

In the case at bar the act of the defendants outside of the state, to wit, the obtainment of money in Connecticut, is not shown by the indictment to have affected a person within this state, for there is no allegation that the complainant was at any time a resident of this state, or within this state, and he was the person affected within the meaning of this section; nor does the indictment show that such act affected property within this state, as the money obtained, at the time of obtainment, in so far as disclosed, was outside of this state; nor does the act of the defendant in the obtainment of money within the state of Connecticut fall within the class of acts affecting the health, morals, or decency of this state, within the purview of those terms as used in that section.  The section in question is therefore plainly inapplicable to the case at bar, and is only alluded to because it re-inforces the contention by the implication which it contains that criminality under our law does not attach to even the class of acts therein mentioned, unless committed within this state.

Apart from the effect to be given to the statutory provisions in our state heretofore alluded to, the question presented for decision in each of the following cases, namely Stewart v. Jessup, 51 Ind. 413, 19 Am. Rep. 739, State v. Shaeffer, 89 Mo. 271, 1 S. W. 293, Connor v. State, 29 Fla. 455, 10 South. 891, 30 Am. St. Rep. 126, and Bates v. State, 124 Wis. 612, 103 N. W. 251, 4 Ann. Cas. 365, was the same as that in the case at bar.  In each the crime charged was larceny by false representation or pretense.  In each the false representation was made in one state, and the property obtained by means of it in another. In each the prosecution was initiated in the state where the pretense was made.  In each the jurisdiction of such state was challenged upon the ground that the obtainment was in another state, and in each the court sustained the contention now made in the case at bar that the crime, if any committed, was cognizable alone in the courts of the state where the obtainment was had.

The decisions in this state cited by the learned assistant district attorney in his brief show that where both the pretense and the obtainment are within the state, and the act consequently criminal, the pretense is regarded as a substantive part of the crime, and not merely as the means by which the crime is committed, and that, being so re-

garded, the venue for purposes of local jurisdiction may be either in the county where the pretense is made, or in that in which the obtainment is had; while contrariwise in those jurisdictions in which the pretense is regarded as the mere means by which the crime is committed the crime is held to be cognizable alone in the jurisdiction of the obtainment, but neither such decisions within the state nor such decisions in other jurisdictions decide the point of law now involved in the case at bar.

The cases of People v. Summerfield, 48 Misc. Rep. 242, 96 N. Y. Supp. 502, and People v. Botkin, 9 Cal. App. 244, 98 Pac. 861, have not been overlooked. In the former the indictment and the demurrer presented the question now before the court. The disallowance of the demurrer in that case seems to have proceeded from a misconception by the learned justice of the indictment then before the court, in that apparently he mistakenly construed it as one charging the misdemeanor of conspiracy, and not the crime of grand larceny by false representation or pretense, and the reasoning in his decision proceeds from such mistaken premise. In the Botkin Case the crime involved was a crime known to the common law, committable under the common law in part in one jurisdiction and in part in another, and the conclusion there reached by the court was sustainable on this principle, apart from the language of the California statute. Such decisions are, therefore, not regarded as authoritative of the question now presented.

Section 327 of the Code of Criminal Procedure provides that if the demurrer be allowed the judgment is final upon the indictment demurred to, and is a bar to another prosecution for the same offense, unless the court, being of opinion that the objection on which the demurrer is allowed may be avoided in a new indictment, direct the case to be resubmitted to the same or another grand jury. Whether the objection taken by the amended demurrer to the first count in the indictment in the case at bar discussed in this opinion can be avoided in a new indictment depends upon whether evidence is procurable which, if submitted to a grand jury, would warrant the finding by such body of a new indictment with allegations appropriate to bring the case within either section 1301 or section 1933 of the Penal Law.

If the district attorney is of opinion that he cannot with propriety proceed to the trial of the demurrant under the common-law count in the present indictment, he is given permission, as such evidence may exist, to resubmit the case to the present regular grand jury.

Demurrer sustained.