## COURT OF APPEALS,

### June 9, 1914.

## THE PEOPLE v. NICHOLAS ARNSTEIN.

(211 N. Y. 585 mem.)

LARCENY*—COMMITTED PARTLY WITHIN AND PARTLY WITHOUT THE STATE NOT A CRIME UNDER PENAL LAW, SEC. 1930.

An indictment for larceny committed partly within and partly without the State of New York, must show that the acts charged constituted a crime under the laws of New York, and also constituted a crime of a corresponding nature under the laws of the foreign state.

Reversing People v. Arnstein, 157 App. Div. 766, 30 N. Y. Crim. 162.

APPEAL by the defendant Arnstein from an order of the Supreme Court, Appellate Division, First Department, which reversed an order of the Court of General Sessions, New York City, sustaining demurrers to two indictments.

The first indictment, containing two counts, charges the defendant Arnstein and five others with the crime of grand larceny in the first degree. The first count of the indictment, which is the part thereof demurred to, sets forth that the defendants on August 19, 1911, at the County of New York, entered into a conspiracy for the purpose of fraudulently dealing in certain copper stocks, and of obtaining by false pretenses the property of the persons to whom they should sell such stocks, and that one of such persons was William F. Shinks.

In pursuance of the conspiracy the defendants went to the City of Springfield, in the State of Massachusetts, with intent

---

* See Notes, Vol. 1, p. 355; Vol. 28, p. 180.

to cheat and defraud Shinks. They there made to him false representations charged in the indictment, and, in further pursuance of the conspiracy, three of the defendants, not including Arnstein, sent telegrams and letters to Shinks from the City of New York tending to confirm the false representations. Subsequently, at the City of Bridgeport, in the State of Connecticut, the defendants obtained from Shinks, who relied on the false representations, the sum of $15,000.

The second indictment is substantially the same as the first, except that the false representations in that case were made in the city of New York directly to the person cheated, one Fairchild, and the money out of which he was defrauded was obtained by the defendants in Philadelphia, Pennsylvania.

The demurrers present the question whether the indictments charge crime within the State of New York.

*George Gordon Battle*, for appellant.

*Charles S. Whitman, District Attorney (Robert S. Johnstone*, of counsel), for respondent.

CUDDEBACK, J.:

It is necessary to consider only the indictment charging fraud upon Shinks, which is perhaps the weaker one of the two.

The district attorney relies on section 1930, subdivision 1, of the Penal Law (Cons. Laws, ch. 40), which reads thus:

" The following persons are liable to punishment within the State: (1) A person who commits within the State any crime, in whole or in part," &c.

The theory of the district attorney is that the facts charged in the indictment constitute a crime under the laws of this State familiarly known as obtaining property by false pretenses, and the allegations that the conspiracy to commit the offense was

formed within the State, and the false representations or some of them emanated from the State, bring the case within the provisions of the Penal Law quoted, even though the property was actually obtained in another State, and regardless of the law prevailing there.

The argument of defendant's counsel is that section 1930, subdivision 1, of the Penal Law, on which the district attorney relies, has relation by its very words only to a *crime* committed in this State; that a bare conspiracy to obtain property by false pretenses without any overt act is not a crime in this State, and neither is the mere making of false representations a crime. It makes no difference upon the defendant's theory whether the conspiracy or the false representations in this State, taken in connection with the acts which followed, done and performed in another State, were criminal in the latter State or not.

The counsel on both sides ignore the foreign law altogether in their construction of subdivision 1, section 1930. In that regard I think they are in error. The object of the enactment, like all penal laws, was to punish crime. Manifestly, in the present case, if the acts done within the State did not amount to a crime under our law, and the acts done without the State, taken in connection with what preceded them here, did not amount to a crime in the place where the transaction was consummated, there was no crime committed anywhere. There must be crime before subdivision 1, section 1930, will apply at all.

Of course, it is not sufficient that the facts charged constitute a crime only in the foreign jurisdiction, for we do not undertake to enforce the laws of other States. The offense in its completed form must also be a crime under the laws of this State (People v. Botkin, 132 Cal., 231).

The special object of the Legislature was that criminals should not find within the limits of this State a safe place

from which to launch offenses against the laws of other States where the nature of the offenses was such as would make them punishable under our laws. The statute was not enacted altogether in a spirit of comity, but to maintain the peace and dignity of our own people.

Subdivision 1 of section 1930, as herein construed, rounds out and completes the law. Crimes instigated in other States and completed here are taken care of in other subdivisions of section 1930 and by section 1933, and are punishable regardless of the foreign law. And if the acts done within the State are in and of themselves offenses against our laws, they are taken care of by other sections of the Penal Law.

There was a very good reason why the Legislature did not provide for the punishment of persons who enter into conspiracies or schemes to do acts unlawful here which are in fact done in another jurisdiction where they are not unlawful. In our Penal Law many acts and omissions are defined as crimes which are only venial and are not regarded as unlawful in some other States of the Union. The Legislature did not deem it necessary to punish such delinquencies consummated in another State, though originating in this State.

Therefore it was necessary to show in the indictment that the acts charged against the defendants constituted a crime under the laws of New York and also constituted a crime of a corresponding nature under the laws of Massachusetts and Connecticut. In that respect the indictment is faulty.

We are to assume that the common law prevails in Massachusetts and Connecticut (People ex rel. Lawrence v. Brady, 56 N. Y., 182; First Nat. Bank v. Nat. Broadway Bank, 156 N. Y., 459; Int. Nat. Text Book Co. v. Connelly, 206 N. Y. 1880. The charge in the indictment amounts to a cheat at common law. All the elements of that offense are presented by the facts alleged. There was a conspiracy to defraud; there were false

pretenses believed by the person cheated, and the property of the victim was actually obtained. (Wharton's Crim. Law, vol. 2, 11th ed., secs. 1378, 1389; People v. Stone, 9 Wend., 182, 188). But the offense of cheating at common law as defined by the authorities was only a misdemeanor, (Wharton's Crim. Law, sec. 1378, Mowrey v. Walsh, 8 Cow., 238).

The crime charged against the defendants in the indictment under consideration is grand larceny, a felony, and in my opinion it cannot be sustained on the assumption that the acts committed in Massachusetts and Connecticut constituted only a misdemeanor. It was necessary to show that grand larceny or some crime which corresponds to that offense, by whatever name known in the foreign jurisdiction, has been committed by the defendants to bring the case within the provisions of section 1930, subdivision 1.

For the reasons which I have stated, I recommend that the order appealed from be reversed and that the order of the Court of General Sessions in and for the City and County of New York be affirmed.

WERNER, J. (concurring):

While I have no doubt of the power of the Legislature to make a crime of the facts set forth in the indictment, I do not believe it intended to do so by subdivision 1 of section 1930 of the Penal Law, or that the subdivision referred to was designated to make any substantive law on the subject of larceny when committed partly within and partly without the State.

---

WILLARD BARTLETT, Ch. J. (dissenting):

Upon this appeal we are called upon to determine the sufficiency of two indictments, each of which accuses the appellant, together with other defendants, of the crime of grand larceny in the first degree, committed by means of false pretenses

(Penal Law, sec. 1290, subdiv. 1). The acts alleged in each indictment suffice to constitute the crime of larceny by false pretenses if all such acts were committed in the State of New York. Only some of the acts, however, are alleged to have been committed in this State.

In the first indictment, which for convenience may be termed the Shinks indictment, it is alleged that the appellant and the other defendants conspired in the County of New York to cheat and defraud one William E. Shinks of the property thereinafter mentioned; that afterwards in the same county they feloniously deliberated upon the said defrauding of the said Shinks and upon the commission of the said fraud; that in pursuance and furtherance of said conspiracy and acting upon such deliberation they went from the County of New York to the City of Springfield, in the State of Massachusetts, where they fraudulently made to the said Shinks certain false pretenses set forth in the indictment, and that the said Shinks was induced by reason of the false and fraudulent pretenses made as aforesaid to deliver $15,000 to the defendant at the City of Bridgeport, in the State of Connecticut. In conformity with these specific averments the indictment further expressly alleges that the larceny therein charged " was committed in part in the County of New York aforesaid and partly in the said City of Bridgeport, in the State of Connecticut, and partly in the said City of Springfield, in the State of Massachusetts, and that the acts constituting the said offense occurred some in the County of New York and others in the said City of Bridgeport, in the State of Connecticut, and others in the said City of Springfield, in the State of Masssachusetts."

The second indictment, denominated the Fairchild indictment, alleges that the appellant and other defendants named therein, in the County of New York, with intent to defraud one George W. Fairchild of the property thereinafter mentioned,

made to him certain false representations specifically set forth in the indictment, as a result of which the said Fairchild was induced to deliver and did deliver $25,000 to the defendants at the City of Philadelphia, in the State of Pennsylvania. This indictment also expressly alleges " that the said larceny was committed in part in the County of New York aforesaid and partly in the City of Philadelphia, in the State of Pennsylvania, and that the acts constituting the said offense occurred some in the County of New York and others in the City of Philadelphia."

From this statement it is apparent that the entire crime of larceny by false pretenses, as defined in the New York statute, was not committed within the territory of the State of New York. Only parts of the crime were committed here; the consummation took place elsewhere.

The question presented by the demurrers to the indictment, therefore, is whether, under the circumstances, the offender is punishable under the laws of the State of New York in their present form.

The statutory provision relied upon as authority for such punishment is subdivision 1 of section 1930, the whole of which section reads as follows:

" Sec. 1930. What persons are punishable criminally.

The following persons are liable to punishment within the State:

1. A person who commits within the State any crime, in whole or in part;

2. A person who commits without the State any offense which, if committed within the State, would be larceny under the laws of the State, and is afterwads found with any of the property stolen or feloniously appropriated within this State;

3. A person who, being without the State, causes, procures, aids or abets another to commit a crime within the State;

4. A person who, being out of this State, abducts or kid-

naps by force or fraud, any person contrary to the laws of the place where such act is committed, and brings, sends or conveys such person within the limits of this State, and is afterward found therein;

5. A person who, being out of the State and with intent to cause within it a result contrary to the laws of this State, does an act which in its natural and usual course results in an act or effect contrary to its laws."

In considering the meaning of subdivision 1—" A person who commits within the State any crime, in whole or in part "— the judge of the Court of General Sessions who passed upon the demurrers held that this provision contemplated a crime the whole of which was committed within the territorial limits of New York; and that the words " in whole or in part " referred to the *quantum* of the offender's participation in the crime. In other words, he thought that under this subdivision a person could not be held liable for larceny under our law unless the whole larceny was committed here, but that he might be liable if he had committed only some of the acts necessary to constitute the crime—that is to say, that it was not essential to show that he had perpetrated the entire offense in order to render him punishable.

The Appellate Division, on the other hand, was of the opinion that the word *crime* in subdivision 1 of section 1930 means a series of acts which would constitute a crime as defined by the laws of New York, notwithstanding that some of the acts might have been done elsewhere. That court held that " this provision was designed to apply to the commission within the jurisdiction of this State of any essential part of a crime as defined by the laws of this State, even though other parts of the crime were committed elsewhere and it was consummated without the State."

Further on in the opinion of Mr. Justice Laughlin it is said:

" It was unquestionably competent for the Legislature to declare such acts as those alleged to have been committed by the respondent and the other defendants within this State to be a crime, even though the conspiracy to obtain the money by fraudulent representation was consummated elsewhere."

One of the authorities cited in support of this view is Common-wealth v. Macloon (101 Mass., 1), where Gray, J., said: " Whenever any act which, if committed wholly within one jurisdiction, would be criminal, is committed partly in and partly out of that jurisdiction, the question is whether so much of the act as operates in the county or State in which the offender is indicted and tried has been declared to be punishable by the law of that jurisdiction."

While the authorities and text writers generally recognize the existence at common law of jurisdiction to punish a wrongful act at the place where it takes effect ( as, for example, to prosecute for murder in the State where the victim dies after being shot in another State), the cases are not so clear that jurisdiction may also be exercised in the absence of statutory authorization at the place where the wrong was initiated. Nevertheless Mr. Bishop, in his philosophical work on the New Criminal Law (vol. 1, sec. 112), says: " Within well established principles it is competent for legislation to make punishable the whole of any offense wherever a material part was committed within the jurisdiction." The question is whether this has been done in New York by the legislation under consideration.

The determination of this appeal really depends upon the meaning of the words " any crime " in subdivision 1, section 1930, of the Penal Law. The context, including all the other language in the same section may properly be studied in order to ascertain the meaning of the expression in question, and we find in the very next subdivision a provision for the punishment of one who commits " without the State any offense which, if

committed within the State, would be larceny under the laws of the State, " if he is afterward found here with any of the stolen property. In order to ascertain whether a person is punishable or not under this second subdivision the court must inquire whether what he has done in another State would constitute larceny if done in New York. If it shall be ascertained that such acts would constitute larceny in New York, then the offender is punishable provided he is afterward found in New York with any of the stolen property in his possession. The effect of this enactment is really to invest the courts of New York with power to try and punish a person for a larceny committed in another State. It requires proof of the commission in another State of every act necessary to constitute the offense; the only additional requirement in order to render such an offender punishable here is that he shall subsequently be found in New York with some of the stolen property in his possession.

While the question is by no means free from difficulty and there are cogent arguments in support of a different construction, I have reached the conclusion that the phrase *any crime* in subdivision 1 of section 1930 of the Penal Law means any offense which, if committed wholly within the State of New York, would constitute a crime against the laws of New York. Our law is made the test of criminality, and one who commits part of such offense here and part elsewhere is punishable here. I think this is the natural meaning of the language used in the statute and I can find no reason which ought to constrain us to interpret it otherwise.

It is objected that this view treats the subdivision in question as the definition of a crime or class of crimes, while the title of the article in which it occurs (Article 174, Punishment) and that of the section itself. " What persons are punishable criminally," hardly justify the idea that the Legislature intended to define any criminal offense therein. This objection is answered

by the unquestionable character of subdivision 2, which certainly defines larceny committed without the State followed by the asportation of the stolen goods hither as constituting larceny under our law. If one subdivision of the section is a definition of a crime, why may not another be. A little further on in the same article we find a crime defined in section 1933, which is entitled " Punishment of acts committed out of the State," and which reads as follows:  " A person who commits an act without this State which affects persons or property within this State, or the public health, morals or decency of this State, and which if committed within this State would be a crime, is punishable as if the act were committed within this State.

Of course the general rule is that the criminal courts of one State take no cognizance of acts committed in another State. " Our Legislature has no extraterritorial jurisdiction, and when it forbids, in unqualified terms, the doing of an act, it must always be understood that the thing is only forbidden within this State " (Bronson, J., in Charles v. People, 1 N. Y., 180, 184).

The proposition, however, that our Legislature has no extraterritorial jurisdiction in criminal matters is only true where it is asserted with reference to an offense in its entirety. There are specific instances in which the Legislature has undertaken to exercise such jurisdiction in respect to an offense only a part of which has been committed in this State. For example, it is provided by section 1047 of the Penal Law that a person is guilty of murder in the second degree and may be indicted, tried and convicted in any county of this State " who, by previous appointment made within the State, fights a duel without the State, and in so doing inflicts a wound upon his antagonist, whereof the person injured dies." Here the principal ingredient of the offense, the killing of the defendant's antagonist, is committed wholly within territory outside the State of New

York, and that the crime is made punishable as murder here, although the only ingredient thereof which occurred in New York was the previous appointment to fight the duel.

Section 1930 of the Penal Law had its origin in the proposed Penal Code prepared by David Dudley Field, William Curtis Noyce and Alexander W. Bradford as Code Commissioners, and submitted to the Legislature in December, 1864. It appeared therein as section 15, and read as follows:

" Sec. 15. The following persons are liable to punishment under the laws of this State:

1. All persons who commit, in whole or in part, any crime within this State;

2. All who commit theft out of this State and bring or are found with the property stolen in this State;

3. All who, being out of this State, abduct or kidnap, by force or fraud, any person contrary to the law of the place where such act is committed, and bring, send or convey such person within the limits of this State, and are afterwards found therein;

4. And all who, being out of this State, cause or aid, advise or encourage, another person to commit any act or be guilty of any neglect within this State which is declared criminal by this Code, and who are afterwards found within this State."

In their note to this section the commissioners say that the principles embodied therein are presented from a somewhat different point of view in the reported Code of Criminal Procedure previously prepared, coupled with provisions distinguishing the proper counties for the trial of offenses. " But," they add, " the jurisdiction of the State over offenses planned *or in part* committed outside its boundaries, ought to be asserted in this Code unless elsewhere enacted." This language certainly indicates an intention in the minds of the distinguished lawyers

who framed this law to make an offense cognizable as a crime here when any part thereof was committed here.

For the reasons stated in addition to those given by Mr. Justice Laughlin at the Appellate Division I am satisfied that these indictments should be upheld.

COLLIN and HOGAN, JJ., concur with CUDDEBACK, J., and WERNER, J., concurs in result, in memorandum; HISCOCK and MILLER, JJ., concur with WILLARD BARTLETT, Ch. J.

Ordered accordingly.