(March 22, 1921.)

# STATE, Respondent, v. J. A. SHEEHAN, *alias* W. T. WATSON, Appellant.

[196 Pac. 532.]

CRIMINAL LAW—OBTAINING MONEY BY FALSE PRETENSES—CRIME CONSUMMATED OUTSIDE OF STATE—VARIANCE—DEFENSE OF ALIBI—DEGREE OF PROOF REQUIRED—INSTRUCTIONS.

1. C. S., sec. 8091, provides: "The following persons are liable to punishment under the laws of this state: 1. All persons who commit, in whole or in part, any crime within this state." Under this section one charged with the crime of obtaining money by false pretenses who commits any portion of such crime within this state is punishable to the same extent and in the same manner as though all of the acts which constituted the crime had been committed within this state.

2. Under the facts as shown by the record in this case, defendant was a party to the crime of obtaining money by false pretenses, which crime was initiated in Ada county, and under the provisions of C. S., sec. 8688, the district court for Ada county had jurisdiction of the offense.

3. Where one is informed against for the crime of obtaining money by false pretenses, proof that the defendant obtained money through the medium of a check drawn upon a bank is sufficient to sustain the allegation charging the crime.

4. In a prosecution for obtaining money by false pretenses the state need not prove that the defendant in the manner alleged obtained the exact amount of money charged in the information. The allegation as to the amount of money obtained is not descriptive of an essential ingredient of the offense.

5. It is incumbent upon one interposing the defense of *alibi* in a criminal case to prove the alleged fact of *alibi*, not beyond a reasonable doubt nor by a preponderance of the evidence, but by such evidence and to such a degree of certainty as will, when the whole evidence is considered, create and leave in the minds of the jury a reasonable doubt of the guilt of the accused.

1. Jurisdiction of offense of obtaining property by false pretenses, see notes in 4 Ann. Cas. 368; Ann. Cas. 1917E, 311.

5. On burden and measure of proof of an *alibi*, see notes in 8 Ann. Cas. 1189; 41 L. R. A. 530.

6. The defense of *alibi* in a criminal case raises a question of fact, and the verdict of a jury thereon will not be disturbed on appeal where there is substantial evidence to support the verdict.

7. *Held*, that the trial court in this case committed no prejudicial or reversible error in the admission of evidence or the giving or refusal to give certain instructions.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Carl A. Davis, Judge.

Judgment of conviction for the crime of obtaining money by false pretenses. *Affirmed.*

Perky & Brinck, for Appellant.

The crime of obtaining money by false pretenses is punishable only in the state where the money is actually obtained. (*Bates v. State,* 124 Wis. 612, 4 Ann. Cas. 365, 103 N. W. 251; *State v. Smith,* 162 Iowa, 336, 144 N. W. 32, 49 L. R. A., N. S., 834; *Commonwealth v. Van Tuyl,* 1 Met. (Ky.) 1, 71 Am. Dec. 455; *Connor v. State,* 29 Fla. 455, 30 Am. St. 126, 10 So. 891; *Graham v. People,* 181 Ill. 477, 55 N. E. 179, 47 L. R. A. 731; *State v. Schaeffer,* 89 Mo. 271, 1 S. W. 293; *People v. Adams,* 3 Denio (N. Y.), 190, 45 Am. Dec. 468; 11 R. C. L. 854; 16 C. J. 190; 8 Ency. Pl. & Pr. 856; *Burton v. United States,* 196 U. S. 741, 25 Sup. Ct. 243, 49 L. ed. 482, see, also, Rose's U. S. Notes.)

The weight of authority is that a charge of obtaining money by false pretenses is not sustained by proof of obtaining a check or other order for payment of money. (*People v. Cronkrite,* 266 Ill. 438, 107 N. E. 703; *People v. Warfield,* 261 Ill. 293, 103 N. E. 979; *Lory v. People,* 229 Ill. 268, 82 N. E. 261; *Lieske v. State,* 60 Tex. Crim. 276, 131 S. W. 1126; *State v. Gibson,* 169 N. C. 318, 85 S. E. 7; *State v. Mispagel,* 207 Mo. 557, 106 S. W. 513; *Lancaster v. State,* 9 Tex. App. 393; *Commonwealth v. Howe,* 132 Mass. 250; *Goodhue v. People,* 94 Ill. 37; *Carr v. State,* 104 Ala. 43, 16 So. 155; *Bates v. State, supra; Childers v. State,* 16 Tex. App. 524; *State v. Casleton,* 255 Mo. 201, 164 S. W. 495.)

A check is not an assignment of the fund.   (C. S., sec., 6056; *Kaesemyer v. Smith,* 22 Ida. 1, 123, 943, 43 L. R. A., N. S., 100.)

Roy L. Black, Attorney General, and J. L. Boone, Assistant, for Respondent.

As at least some of the fraudulent acts and pretenses were made and performed in Ada county, it is clear that the offense was partly committed there, and the court had jurisdiction.   (*People v. Dimick,* 107 N. Y. 13, 14 N. E. 178; *People v. Peckens,* 153 N. Y. 576, 47 N. E. 883; *Skiff v. People,* 2 Parker's Crim. Rep. 139; *Commonwealth v. Wood,* 142 Mass. 459, 8 N. E. 432; *Wilcox v. Nolze,* 34 Ohio St. 520.)

The prosecution may be instituted where the false pretenses were made when it is shown that the money was actually paid, even though such prosecution was in a different county from the one where the representations were made. (*State v. Smith,* 162 Iowa, 336, 144 N. W. 32, 49 L. R. A., N. S., 834; *People v. Summerfield,* 96 N. Y. Supp. 502, 48 Misc. Rep. 242; *Farless v. Morehead,* 201 Fed. 310, 119 C. C. A. 548.)

Conspiracy being shown, the acts and declarations of any of the parties made during the continuation of the conspiracy and with regard to matters connected with it are properly admissible; the acts of any of the conspirators become the acts of all, and jurisdiction exists in any place in which any overt act took place.   (*State v. Soper,* 118 Iowa, 1, 91 N. W. 774; *Pearce v. Territory,* 11 Okl. 438, 68 Pac. 504; Wharton's Crim. Law, par. 664.)

The *corpus delicti* of obtaining money under false pretenses is the falsity of the representation.   (Wharton on Crim. Ev., pp; 634, 642.)

Concerted action on the part of several parties to commit a crime is enough to convict either or any of such parties in any place where they did anything tending toward the completion of the offense.   (Wharton's Crim. L., pars. 334, 1472, 1664; *Connor v. State,* 29 Fla. 455, 30 Am. St. 126,

10 So. 891; 11 R. C. L. 855, note 10; C. J. 91, note 80; *People v. Jordan,* 66 Cal. 10, 56 Am. Rep. 73, 4 Pac. 773; *People v. Cadot,* 138 Cal. 527, 71 Pac. 649.)

"In an indictment charging a person with obtaining money by false pretenses, proof that the defendant obtained the money through the medium of an order on a bank or other person, whether verbal or written, is sufficient to sustain the allegation." (*Smith v. State,* 74 Fla. 594, 77 So. 274; *Foote v. State,* 16 Ala. App. 136, 75 So. 728; *Rand v. Commonwealth,* 176 Ky. 343, 195 S. W. 802; *State v. Holmes,* 98 Kan. 74, 157 Pac. 412, L. R. A. 1916E, 1104; *Clark v. State,* 14 Ala. App. 633, 72 So. 291; *State v. Cary,* 128 Minn. 481, 151 N. W. 186; *King v. State,* 66 Tex. Crim. 397, 146 S. W. 543; *Bartley v. State,* 53 Neb. 310, 73 N. W. 744; *People v. Leavens,* 12 Cal. App. 178, 106 Pac. 1103; *Laev v. State,* 152 Wis. 33, 139 N. W. 416; *State v. Gibson,* 132 Iowa, 53, 106 N. W. 270; *People v. Hoffman,* 142 Mich. 531, 105 N. W. 838.)

Where the defendant relies on the *alibi,* the burden of proof is upon him as to that proposition, and the defendant has not satisfied that burden of proof. (*State v. Webb,* 6 Ida. 429, 55 Pac. 892; *State v. Davis,* 6 Ida. 159, 53 Pac. 678; *State v. Silva,* 21 Ida. 247, 120 Pac. 835; *State v. Ward,* 31 Ida. 419, 173 Pac. 497.)

It is proper to show all of the acts indulged in by way of preparation for a crime and the acts whereby the crime is completed, and any further acts throwing light upon the general situation with regard to the criminal intent or the participants or the criminal acts of any or all of the participants. (*State v. Ellington,* 4 Ida. 529, 43 Pac. 60; 12 C. J. 634, note 54; *Commonwealth v. Watermann,* 122 Mass. 43; *Jackson v. State,* 28 Tex. App. 370, 19 Am. St. 839, 13 S. W. 451; *State v. Alcorn,* 7 Ida. 599, 79 Am. St. 252, 64 Pac. 1014; *State v. Marren,* 17 Ida. 766, 107 Pac. 993; *State v. Corcoran,* 7 Ida. 220, 61 Pac. 1034; *State v. Hammock,* 18 Ida. 424, 110 Pac. 169; *State v. Curtis,* 29 Ida. 724, 161 Pac. 578; 12 C. J. 640.)

Where there is a conflict in the evidence and there is evidence to sustain the verdict, immaterial errors, if any, will be disregarded and the verdict will not be disturbed. (*State v. Rathbone*, 8 Ida. 161, 67 Pac. 186; *State v. Collett & Ireland*, 9 Ida. 608, 75 Pac. 271; *State v. Cook*, 13 Ida. 45, 88 Pac. 240; *State v. Downing*, 23 Ida. 540, 130 Pac. 461; *State v. Levy*, 9 Ida. 483, 75 Pac. 227; *State v. Bond*, 12 Ida. 424, 86 Pac. 43; *State v. Williams*, 12 Ida. 483, 86 Pac. 53; *State v. Mox Mox*, 28 Ida. 176, 152 Pac. 802; *State v. Ward*, 31 Ida. 419, 173 Pac. 497; *State v. Steen*, 29 Ida. 337, 158 Pac. 499; *State v. Askew*, 32 Ida. 456, 184 Pac. 474.)

BUDGE, J.—Appellant Sheehan, *alias* W. T. Watson, E. P. Morton, Frank Caviness, *alias* John Doe Dise, and F. L. King, were charged with the crime of obtaining money by false pretenses, in that they did, with intent, knowingly, designedly, wilfully, unlawfully, falsely, fraudulently and feloniously, defraud one A. L. Roberts of about $3,800, lawful money of the United States, representing and pretending to him that Morton had come to Boise for the purpose of purchasing stock of the Columbia & Nehalem River Railroad; that certain of said stock was owned and possessed by various individuals, including appellant Sheehan; that certain purported stock certificates which appellant had and exhibited to Roberts were true and genuine certificates and were in fact certificates representing stock in said railroad; and said Roberts wholly relying upon and believing said representations and pretenses and being deceived thereby, by reason thereof was between March 3, 1916, and March 16, 1916, induced to and did pay to the defendants the sum of about $3,800.

The other defendants not having been apprehended, appellant alone was tried and convicted. This appeal is from the judgment of conviction.

The facts so far as pertinent to a disposition of the case are as follows:

A. L. Roberts, a farmer, residing near Roseberry, Boise county, was in Boise during the winter of 1915 and spring of

1916. On February 28, 1916, he met Dise at a state land sale in Boise. He again met Dise on March 3, 1916, and at the latter's suggestion walked up to the Capitol Building, on the steps of which they found and picked up a bank-book containing a letter and a check. They read the letter, which was addressed to E. P. Morton, at the Bristol Hotel, Boise, and purported to come from Morton's brother in the east, and to contain inside information regarding stock of the Columbia & Nehalem River Railroad Company, of which the writer claimed to be an officer. The letter stated that the stock had never paid a dividend and could be bought cheap from the stockholders; that the writer had never before taken advantage of his employment, but had lost a lot of money and had to make it up. Roberts and Dise called upon Morton and delivered the letter to him, and as a reward therefor, and for secrecy concerning its contents, Morton offered to employ Dise and Roberts to buy stock and gave them the names of certain stockholders, including Sheehan at Caldwell, and a broker named King at the Saratoga Hotel in Caldwell, who would buy the stock.

The same day, Morton, Dise and Roberts went to Caldwell, where they met King, who purchased a 50-share certificate of stock from Morton, paying him $2.25 per share. They then called on Sheehan, from whom they bought 135 shares at $1 each, Morton ostensibly paying Sheehan therefor. At the same time they secured an option for seven days from Sheehan on 15,000 shares at the same price, purported to be held by his mother and sister, upon which Morton gave Sheehan a check for $3,000. They again met Sheehan at Weiser on March 7th and secured an extension of the option in consideration of another ostensible payment of $4,000 to Sheehan, $900 of which Roberts agreed to pay, and which Dise purported to advance for him by giving his own check for $1,800 to Sheehan for his own share and that of Roberts. On March 9th Roberts gave Dise, at Weiser, a check on the Weiser Loan & Trust Company for the $900 advanced, and on the same day they left for Baker, Oregon. On March 14th they met Sheehan in Baker and secured a further ex-

tension of the option, Roberts paying Sheehan $1,000 by check on the Baker Loan & Trust Company, and Dise and Morton each ostensibly paying the same amount, and on March 16th they closed the deal, Roberts paying Sheehan $1,900 by check also on the Baker Loan & Trust Company, and Dise and Morton ostensibly paying him $2,100 and $500, respectively. The checks were delivered to Sheehan and the money was obtained upon Robert's checks by Sheehan in Baker. Sheehan delivered to Roberts, Morton and Dise the purported certificate of stock for 15,000 shares, which they took to King, who was also in Baker at the time, and who bought the certificate from them at $2.25 per share, and took it for the ostensible purpose of sending it in to the company at Portland, Oregon, to have the stock transferred before paying therefor. King gave Roberts a receipt for the certificate and Roberts then left Baker, in pursuance of an arrangement made with Morton and Dise, to locate other stockholders at Tekoe, Washington and Coeur d'Alene, Idaho.

Roberts never heard from Dise, Morton, King or Sheehan again, and never received any of his money for the certificate of stock. The stock was spurious. The corporation whose name had been used was a close corporation, and no such certificates had ever been issued by it.

Roberts did not see Sheehan again until June 23d, when he identified him at Boise.

Appellant contends that the offense, if any is shown by the evidence to have been committed, was committed in Oregon, and that the district court of Ada county was without jurisdiction. This question is raised by various assignments of error going to the admission of exhibits and testimony, and the giving and refusing of instructions, and as to the sufficiency of the evidence to sustain the verdict.

The evidence clearly establishes the fact that a part of the crime was committed in Idaho. The initial false and fraudulent. representations were made in Ada county, followed by similar acts in Canyon and Washington counties, and by further representations of the same character in

Baker City, Oregon, where the proof clearly shows that money was actually obtained as a result thereof.

While there are authorities which support appellant's contention, we do not think they are applicable to this case in view of the provisions of our statute.

C. S., sec. 8091, provides that:

"The following persons are liable to punishment under the laws of this state:

"1. All persons who commit, in whole or in part, any crime within this state. . . . "

California and New York have like statutory provisions, which have been considered by the courts of those states.

In *People v. Botkin*, 132 Cal. 231, 84 Am. St. 39, 64 Pac. 286, and 9 Cal. App. 244, 98 Pac. 861, Cordelia Botkin was convicted of murder. The defendant in that case sent a box of poisoned candy by mail from San Francisco to Elizabeth Dunning at Dover, Delaware, with intent that Elizabeth Dunning should eat of the candy and her death be caused thereby. The candy was received by the party to whom addressed, she partook thereof, and her death was the result. It was urged that the defendant might not be tried for the crime of murder in the California courts, but the supreme court of California, in disposing of this contention, said:

"The acts of defendant constituted murder, and a part of those acts were done by her in this state. Preparing and sending the poisoned candy to Elizabeth Dunning, coupled with a murderous intent, constituted an attempt to commit murder; and defendant could have been prosecuted in this state for that crime if for any reason the candy had failed to fulfill its deadly mission. That being so,—those acts being sufficient, standing alone, to constitute a crime, and those acts resulting in the death of the person sought to be killed,—nothing is plainer than that the crime of murder was in part committed within this state. The murder being committed in part in this state, the section of the law quoted (Cal. Pen. Code, art. 27) declares that persons committing murder under those circumstances 'are liable to punishment under the laws of this state.' The language quoted can have

but one meaning, and that is: A person committing a murder in part in this state is punishable under the laws of this state, the same as though the murder was wholly committed in this state." (*Derby v. Stevens,* 64 Cal. 287, 30 Pac. 820.)

See, also, *People v. Sansom,* 37 Cal. App. 435, 173 Pac. 1107.

Sec. 1930 of the Penal Law of New York, while not identical with, is substantially the same as, C. S., sec. 8091, subd. 1, and has been construed by the New York courts in the case of *People v. Arnstein,* 211 N. Y. 585, 105 N. E. 814, reversing order, 142 N. Y. Supp. 842, 157 App. Div. 766, 30 N. Y. Cr. R. 162, which reversed 138 N. Y. Supp. 806, 78 Misc. Rep. 18, 28 N. Y. Cr. R. 165; and *People v. Zayas,* 217 N. Y. 78, Ann. Cas. 1917E, 309, 111 N. E. 465, reversing judgment in 153 N. Y. Supp. 1135, 168 App. Div. 949. In the latter case the New York court said:

"The word 'crime' as used in this statute should be construed solely with reference to the Penal Law of the state of New York. In *People v. Arnstein,* 211 N. Y. 585, 592, 105 N. E. 814, 816, Chief Judge Bartlett said:

" 'The determination of this appeal really depends upon the meaning of the words 'any crime' in subdivision 1, section 1930, of the Penal Law. . . . . I have reached the conclusion that the phrase 'any crime' in subdivision 1 of section 1930 of the Penal Law means any offense which, if committed wholly within the state of New York, would constitute a crime against the laws of New York. Our law is made the test of criminality, and one who commits part of such offense here and part elsewhere is punishable here. I think this is the natural meaning of the language used in the statute, and I can find no reason which ought to constrain us to interpret it otherwise.' "

It must be inferred from the provisions of subd. 1, sec. 8091, *supra,* that the legislature intended to punish any person who should commit any portion of a crime within this state to the same extent and in the same manner as though all of the acts which constitute the crime had been committed

here. The provision of the statute is plain, and we entertain no doubt as to the power of the legislature to so provide.

Appellant's contention that the district court for Ada county was without jurisdiction, for the reason that appellant made no false representations to Roberts within that county, is equally untenable. While it is true that Roberts met appellant for the first time at Caldwell, Canyon county, still no other deduction can be made from the evidence adduced upon the trial than that appellant was party to a preconceived plan to defraud Roberts. The record convinces us that appellant was fully apprised of the false representations which had been theretofore made by Morton and Dise to Roberts in Ada county; that he adopted those acts, and that he himself made further false representations to the same effect to Roberts in Canyon and Washington counties and in Baker, Oregon. The crime was initiated in Ada county, appellant was a party to it, and under the provisions of C. S., sec. 8688, the district court for Ada county had jurisdiction of the offense.

Appellant's next contention is that exhibits and testimony were admitted which were at variance from the allegations of the information, in that appellant was charged with obtaining "money" and the evidence objected to tended to show the obtaining of bank checks. The record discloses not the direct transfer of currency from Roberts to appellant, but the giving of two checks by Roberts to appellant, the cashing thereof in Baker, Oregon, and the payment of the money by the bank to appellant.

The checks were the means used by which the money was ultimately obtained. We think the correct rule of law is well stated in *Smith v. State,* 74 Fla. 594, 77 So. 274, in the following language:

"In an indictment charging a person with obtaining money by false pretenses, proof that the defendant obtained the money through the medium of an order on a bank or other person, whether verbal or written, is sufficient to sustain the allegation."

And in *Bartley v. State,* 53 Neb. 310, 73 N. W. 744, where the court said:

"The giving of credit as a deposit for the amount of a check, by the bank upon which it is drawn, is, in contemplation of law, a payment of the check in money, to the same extent as though the currency had been paid over the counter on the check, and immediately redeposited by the payee."

In the case of *People v. Leavens,* 12 Cal. App. 178, 106 Pac. 1103, at 1106, which we think is peculiarly applicable to the facts in the instant case, the court says in the course of the opinion:

"There is no variance between the allegations of the information and the proof. The allegation is that the defendant procured money from Norwood, and the proof is that he did procure money, but it was procured by the means or use of a check or written request which Norwood made upon the bank for the payment of the money. There may be a difference between getting money directly by handing the coin over in hand and giving a request in writing to a third party who complies with the request and hands it over, but the effect is the same, and the distinction is highly technical. An appeal that depends upon such questions for reversal is devoid of merit. The defendant obtained the money, and obtained it from Norwood, no matter what means were used in finally conveying the money from Norwood to the defendant. (*People v. Whalen,* 154 Cal. 472, 98 Pac. 194.)"

It is further contended that a variance arose by reason of the fact that appellant was charged with obtaining $3,800 while the evidence showed and the jury found that he obtained but $2,900. In a prosecution for obtaining money by false pretenses, the state need not prove that the defendant in the manner alleged obtained the exact amount of money alleged in the information, the allegation as to the amount of money obtained not being descriptive of an essential ingredient of the offense. (*Foote v. State,* 16 Ala. App. 136, 75 So. 728.)

Appellant contends that the testimony tending to identify him as Watson was dubious, and that the witnesses for appellant established beyond reasonable doubt the fact of his presence elsewhere at the time of the commission of the offense.

While there is an unusually sharp conflict in the testimony upon this question, there is, nevertheless, substantial evidence establishing the identity of appellant as one of the persons who committed the offense charged. In order to avail himself of the defense of alibi, it was incumbent upon appellant to prove the alibi not beyond a reasonable doubt nor by a preponderance of the evidence, but by such evidence and to such a degree of certainty as will, when the whole evidence is considered, create and leave in the minds of the jury a reasonable doubt of the guilt of the accused. This defense raised a question of fact, and the verdict of a jury on such a question will not be disturbed on appeal where, as in this case, there is substantial evidence to support the verdict.

Appellant complains of the admission in evidence of State's Exhibit 1, being the check for $900 given by Roberts to Dise at Weiser. Conceding that the state failed to prove by competent evidence that this check was paid, or that the check given by Dise to Sheehan for $1,800 was paid, it was part of the criminal transaction. The jury found by their verdict that this $900 check was not paid to Sheehan, since their verdict was for $2,900 instead of $3,800. We fail to see wherein the admission of this exhibit constituted reversible, prejudicial error.

We have carefully examined the entire record, including the instructions given and refused, and have been unable to find wherein the appellant has been prejudiced or wherein the court committed reversible error.

The judgment is therefore affirmed.

Rice, C. J., and McCarthy, Dunn and Lee, JJ., concur.