STATE OF NEBRASKA EX REL. MARCILINO N. BRITO, APPELLEE AND CROSS-APPELLANT, V. STEVE WARRICK, SHERIFF OF SCOTTS BLUFF COUNTY, NEBRASKA, APPELLANT AND CROSS-APPELLEE.

125 N. W. 2d 545

Filed January 3, 1964. No. 35516.

Clarence A. H. Meyer, Attorney General, and Richard H. Williams, for appellant.

Bertrand V. Tibbels, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an appeal by Steve Warrick, sheriff of Scotts Bluff County, Nebraska, hereinafter referred to as respondent, from a judgment of the district court for Scotts Bluff County in a habeas corpus proceeding wherein the court discharged Marcilino N. Brito from custody.

The petitioner, Marcilino N. Brito, relator and appellee, hereinafter referred to as relator, alleged that he was unlawfully deprived of his liberty by being detained in the Scotts Bluff County jail by the respondent; and that he was detained by virtue of an information charging him with the crime of nonsupport of his minor children committed in the county of Scotts Bluff from the 15th day of May 1961, to the 2nd day of July 1962. Relator also alleged that during that time and until after his arrest in Texas he was not in the State of Nebraska but was living in and was a resident of the State of Texas which was the marriage domicile. Relator was extradited under the provisions of the Uniform Reciprocal Enforcement of Support Act from the State of Texas to the State of Nebraska on the nonsupport charge.

It is relator's contention that the Scotts Bluff court does not have jurisdiction to try him on the charge of nonsupport because he was not in Nebraska at the time of the alleged commission of the offense charged. He

also contends that he can only be prosecuted in the county in which the crime was committed, which he asserts would have to be the county of his residence in Texas. He further maintains that if the various statutes should be interpreted as permitting his prosecution in Nebraska under these circumstances, they are unconstitutional and void.

The district court found the relator's detention unlawful and ordered his discharge. It held that the court was without jurisdiction to determine the guilt of the relator and that the warrant issued was void. It also held that section 42-705, R. R. S. 1943, is unconstitutional, null, and void as a contravention of Article I, section 11, Constitution of Nebraska, insofar as it authorizes trial of an accused in a county other than that in which the offense charged is alleged to have been committed. Respondent assigns each of these findings as error. We sustain the assignments of error on each point.

This is a habeas corpus proceeding, so we are here concerned solely with the jurisdictional question and not with the sufficiency of the evidence which may be adduced when the writ is denied and the relator stands trial.

The mother of the children secured an uncontested divorce from the relator in the district court of Midland County, Texas, on July 11, 1960. Sometime thereafter she moved the children to Nebraska. The trial court did not permit the relator to prove that he did not consent to his family's migration from Texas and that he was not willing for them to come to the State of Nebraska. He has filed a cross-appeal herein to present this point. We hold this to be immaterial but for the purpose of our discussion herein we will consider the evidence as having been received, and decide this case on the premise that the relator was opposed to the removal of his family from the State of Texas to the State of Nebraska.

Relator is being prosecuted under section 28-449, R. R. S. 1943, which provides, insofar as material here, as follows: "Whoever willfully fails, refuses, or neglects to provide proper food, clothing, shelter, or in case of sickness to care for his wife, wife and minor child, or minor child, * * * shall, upon conviction thereof, * * * (2) if the violation shall have continued for a period of thirty days or more be deemed guilty of a felony and be punished by imprisonment in the penitentiary for a period of not less than one year nor more than three years."

The statute is silent as to venue. It is, however, the settled law of this state that for a resident of the State of Nebraska, the county which is the matrimonial domicile fixes the venue. Preston v. State, 106 Neb. 848, 184 N. W. 925. As between counties in Nebraska there may be ample reason for this rule, but we see no reason to extend it further than the law now requires. In Schmidt v. State, 110 Neb. 504, 194 N. W. 679, we recognized an exception in a situation where the father had sent his family into another county and thereafter failed to provide either support or transportation home.

Here, however, the father is not a resident of the State of Nebraska. A divorce has terminated the marriage in the state of the marriage domicile. The mother who had the custody of the children, for reasons which do not appear but which are immaterial herein, found it necessary to move them to Nebraska, and they now are residents of this state and entitled to its protection. What should be the venue where the father is a nonresident of the State of Nebraska, and the mother who has their custody is a resident of this state? Section 28-449, R. R. S. 1943, was enacted for a wise purpose. We should not construe it so narrowly that we defeat that purpose. In Preston v. State, *supra,* the domicile of the father was the domicile of the child. Here, the mother had a right to establish a separate domicile and that domicile became the domicile of the children.

Section 29-1301, R. S. Supp., 1961, provides that the trial of criminal cases shall be in the county where the offense was committed. We have no hesitancy in holding that the offense herein was committed at the place where the children reside. The statute covers not the commission of an affirmative act but rather the omission to perform a parental duty, that of providing for the necessities of minor children. As relator points out, in Lincoln Dairy Co. v. Finigan, 170 Neb. 777, 104 N. W. 2d 227, we said: "In this state all public offenses are statutory, and no person can be punished for any act or omission which is not made penal by the plain import of a properly enacted statute." Here the plain import of the statute specifically makes the omission to support a penal act. It is the duty of the state to protect the lives and persons of its citizens and others temporarily resident therein. The compelling interest of the state in the welfare of children certainly includes the duty to require those who are obligated to do so to provide maintenance for their minor children.

There is great confusion among the various states as to whether a criminal charge for nonsupport of a child is affected by the nonresidence of the father. However, this confusion can be considerably reduced by an analysis of the specific statutory provisions involved and by a determination as to whether the case actually involves abandonment or desertion or whether it involves nonsupport. Abandonment and desertion involve the commission of an affirmative act at a specific time and place. Nonsupport, however, involves a continuing omission to act wherever the child is located.

As we interpret section 28-449, R. R. S. 1943, it was passed for the purpose of enforcing the natural duties of a father to his minor children. It is for the benefit of the children. It is a duty owing to the children wherever they may be or wherever, in disregard of his parental duty and the obligation inherent therein, the father permits his children to remain without proper

support. It is the omission to provide this support which constitutes a violation of the statute. Where the father might be at the time is a matter of no consequence. The omission occurs at the place where the children reside. That is the point at which the father has neglected to provide for their maintenance and where an action should lie. This holding finds support in cases from other jurisdictions which represent the majority view considering only cases involving nonsupport. See, State v. Wellman, 102 Kan. 503, 170 P. 1052, L. R. A. 1918D 949, Ann. Cas. 1918D 1006; Osborn v. Harris, 115 Utah 204, 203 P. 2d 917; Ex Parte Heath, 87 Mont. 370, 287 P. 636; State v. Tickle, 238 N. C. 206, 77 S. E. 2d 632; State v. Haworth, 66 Wyo. 238, 208 P. 2d 279.

In a state which does not recognize the Uniform Reciprocal Enforcement of Support Act, or those states which do not include the section on criminal enforcement in their act, it might be difficult to get jurisdiction of the person of the father to subject him to punishment, but this fact does not affect his guilt or his liability to punishment if he can be brought to trial. Texas does recognize the act, and granted extradition.

It is apparent that the relator is questioning the validity of the proceedings by which he was extradited from Texas. The following from State v. Wellman, 102 Kan. 503, 170 P. 1052, L. R. A. 1918D 949, Ann. Cas. 1918D 1006, is a complete answer to this contention: "* * * where a nonresident of the state has broken its criminal laws, its right to punish him ought not to be dependent on the regularity of the proceedings by which he was surrendered to its officials. In Re Moyer, 12 Idaho 250, 85 Pac. 897, 12 L. R. A. (N. S.) 227, 118 Am. St. Rep. 214 (affirmed in Morey v. Whitney, 203 U. S. 222, 27 Sup. Ct. 111, 51 L. Ed. 148, 7 Ann. Cas. 1047), the authorities on the subject are collected, and the grounds of this view are well stated in this language:

" 'We are of the opinion that after the prisoner is within the jurisdiction of the demanding state, and is

there applying to its courts for relief, he cannot raise the question as to whether or not he has been, as a matter of fact, a fugitive from the justice of the state within the meaning of the federal constitution, and the act of Congress. A careful and diligent examination of the many authorities touching upon this subject, and the reasons that exist for invoking the aid of the writ in such cases, convince us that the question as to whether or not a citizen is a fugitive from justice is one that can only be available to him so long as he is beyond the jurisdiction of the state against whose laws he is alleged to have transgressed. It is a remedy which does not go to the merits of the case, and does not involve the inquiry as to whether or not he is in fact guilty or innocent of the offense charged. It is a remedy that merely goes to the question of his removal from the jurisdiction in which he is found to the jurisdiction against the laws of which he is charged with offending. If these views be correct, and we believe they are, it follows that so soon as the prisoner is within the jurisdiction of the demanding state, both the reason and object for invoking this principle of law have ceased and can no longer have any application. * * * The warrant of the chief executive of the state surrendering the prisoner, whether issued lawfully or unlawfully, has accomplished its purpose and becomes functus officio, as soon as the prisoner is delivered into the jurisdiction of the demanding state, and its validity and the regularity of its issuance thereupon cease to be questions open to the consideration of the courts of the demanding state. * * * One who commits a crime against the laws of the state, whether committed by him while in person on its soil or absent in a foreign jurisdiction, and acting through some other agency or medium, has no vested right of asylum in a sister state (citing cases), and the fact that a wrong is committed against him in the manner or method pursued in subjecting his person to the jurisdiction of the complaining state, and that

such wrong is redressible either in the civil or criminal courts, can constitute no legal or just reason why he himself should not answer the charge against him when brought before the proper tribunal.' "

The trial court ruled that section 42-705, R. R. S. 1943, was unconstitutional and void as in contravention of Article I, section 11, Constitution of Nebraska, insofar as it authorized trial of the relator in a county other than that in which the offense charged is alleged to have been committed. What we have said above as to venue is a sufficient answer to this holding. The pertinent question relator is attempting to raise by attacking venue is the right of a state to enact legislation which permits the extradition of persons who, while resident in that state, are alleged, constructively or by omission, to have committed an act within the demanding state at a time when they were never within the demanding state, which act is a crime in the demanding state.

Relator here is questioning the constitutionality of section 5 of the Uniform Reciprocal Enforcement of Support Act, which in our statute is section 42-705, R. R. S. 1943, and reads as follows: "The Governor of this state (1) may demand from the Governor of any other state the surrender of any person found in any such other state who is charged in this state with the crime of failing to provide for the support of any person in this state, and (2) may surrender on demand by the Governor of any other state any person found in this state who is charged in such other state with the crime of failing to provide for the support of a person in such other state. *The provisions for extradition of criminals not inconsistent herewith shall apply to any such demand although the person whose surrender is demanded was not in the demanding state at the time of the commission of the crime and although he had not fled therefrom.* Neither the demand, the oath nor any proceedings for extradition pursuant to this section need state or show that the person whose surrender is demanded

has fled from justice, or at the time of the commission of the crime was in the demanding or the other state." (Italics supplied.) This is the section under which relator was extradited and which the trial court held to be unconstitutional.

The part italicized above is the part questioned. This statute was undoubtedly patterned after section 6 of the Uniform Criminal Extradition Act, which is found in our statute as section 29-706, R. R. S. 1943, and which provided that extradition would be permitted notwithstanding the fact that the accused was not in the demanding state at the time of the commission of the crime and had not fled therefrom.

We assume it is relator's contention that it is beyond the power of a state to deal with the subject of extradition except within the area permitted by federal legislation because the Constitution put the entire subject of extradition under exclusive federal control. We cannot accept this premise. The Constitution does not purport to cover the entire field of extradition but is expressly limited to one class.

Article IV, section 2, Constitution of the United States, covers the extradition of a person "who shall flee from Justice." In accordance with this grant of power, Congress has legislated but has failed to extend the federal statute to the full limit of its constitutional power. In an area embraced within the constitutional grant but not specifically covered by the federal legislation, Innes v. Tobin, 240 U. S. 127, 36 S. Ct. 290, 60 L. Ed. 562, held that a state could act to the extent that Congress has failed to extend the statute to the full limit of its constitutional power. The federal constitutional provision, however, covers only persons "who shall flee from Justice." Since Congress may legislate only on subjects authorized by the Constitution, and since powers not expressly delegated to the United States by the Constitution are reserved to the states, it should follow that if a person has not fled from the demanding state, this field

is left to the states. In any event, Congress has not attempted to legislate in this area, and at least 44 of our states have done so by the adoption of section 6 of the Uniform Criminal Extradition Act. Section 6 of the Uniform Criminal Extradition Act has been before some of the courts of other states and has been found to be a constitutional exercise of power by those states passing upon the question.

We hold that section 5 of the Uniform Reciprocal Enforcement of Support Act, which in our statute is section 42-705, R. R. S. 1943, is a constitutional exercise of power. For analogous holdings referring to section 6 of the Uniform Criminal Extradition Act, embracing essentially the same point, see In re Morgan, 86 Cal. App. 2d 217, 194 P. 2d 800; Morgan v. Horrall, 175 F. 2d 404, on which certiorari was denied by the United States Supreme Court at 338 U. S. 827, 70 S. Ct. 76, 94 L. Ed. 503; Culbertson v. Sweeney, 70 Ohio App. 344, 44 N. E. 2d 807; Cassis v. Fair, 126 W. Va. 557, 29 S. E. 2d 245, 151 A. L. R. 233, and the Annotation at 151 A. L. R. 239.

For the reasons given, we find that the judgment of discharge entered by the trial court should be and hereby is vacated and set aside and the court is directed to order relator returned to jail until he makes bond, as previously provided by the court.

REVERSED AND REMANDED WITH DIRECTIONS.