Scot L. **WHEAT**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A-1562.

Court of Appeals of Alaska.

March 27, 1987.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

This case raises a question concerning the extent to which Alaska's criminal laws may be applied to conduct occurring outside the state's territorial limits. The precise issue is whether Alaska is vested with authority to convict an individual for the crime of custodial interference when all the acts constituting the offense were committed outside of the state. We conclude that the state has such authority.

Scot L. Wheat and Rebecca Carroll were married in the 1970's; their only child, Crystal, was born in 1977. Wheat and Carroll eventually obtained a divorce in Alaska. A decree entered by stipulation in

1983 awarded primary custody of Crystal to Carroll, with summer visitation to Wheat. In June of 1985, Crystal traveled from her mother's home in Fairbanks to spend the summer with her father in Arizona. When Wheat failed to return Crystal to Alaska as scheduled on August 9, 1985, Carroll initiated efforts to locate the child and her father. A charge of custodial interference in the first degree was filed against Wheat in Fairbanks on September 13, 1985. In mid-October, after a search lasting approximately two months, Wheat was located and returned Crystal to Alaska. Wheat eventually entered a plea of no contest to a charge of custodial interference in the second degree. The basis of the charge was Wheat's conduct in keeping Crystal in Arizona, away from Carroll, Crystal's lawful custodian. *See* AS 11.41.-330(a). In entering his plea of no contest to the charge, Wheat reserved the right to argue on appeal that the state lacked jurisdiction over the offense because it was committed outside Alaska's territorial limits.[1]

▮ Wheat's first contention on appeal is that his conviction is precluded by the Sixth Amendment to the United States Constitution, which guarantees to the accused in a criminal prosecution the right to a trial by a "jury of the state and district wherein the crime shall have been committed."

While early state court decisions may well have interpreted this provision to require a strict territorial approach to criminal jurisdiction—that is, an approach basing jurisdiction solely on the place where the alleged criminal acts occurred—this view was long ago rejected by the United States Supreme Court:

> The petitioner relies on those provisions of the Constitution of the United States which declare that in all criminal prosecutions the accused shall have the right to be tried by an impartial jury of the State and District wherein the crime shall have been committed. Art. 3, Sect. 2; Amendments, Art. 6.

But the right thereby secured is not a right to be tried in the district where the accused resides, or even in the district in which he is personally at the time of committing the crime, but in the district "wherein the crime shall have been committed."

*In re Palliser,* 136 U.S. 257, 265, 10 S.Ct. 1034, 1036, 34 L.Ed. 514 (1890). *Accord, Burton v. United States,* 202 U.S. 344, 387, 26 S.Ct. 688, 701, 50 L.Ed. 1057 (1906).

The Supreme Court has also made it clear that, for Sixth Amendment purposes, a crime may be "committed" not only where the acts constituting the offense are committed, but also where the harm occasioned by those acts occurs:

> Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he [the accused] had been present at the effect, if the State should succeed in getting him within its power.

*Strassheim v. Daily,* 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911) (citations omitted).

The issue is now well-settled in the modern view that states may rely, without constitutional impediment, on a number of non-territorial grounds as a basis for asserting criminal jurisdiction over acts occurring outside their borders. *See* Perkins & Boyce, *Criminal Law* at 38–45 (3rd ed. 1982); 1 C. Torcia, *Wharton's Criminal Law,* § 14 (12th ed. 1974). *See generally Model Penal Code* § 1.03 and commentary at 33–65 (1985); George, *Extraterritorial Application of Penal Legislation,* 64 Mich.L.Rev. 609 (1966). We find no merit to Wheat's constitutional claim.

The second argument advanced by Wheat presents a closer issue. Wheat contends that Alaska law forbids the extraterritorial application of its criminal statutes. Criminal jurisdiction in Alaska is governed by AS 12.05.010, which provides:

> *Crime commenced outside state but consummated inside.* When the com-

---

**1.** No issue of personal jurisdiction is raised in this case, since Wheat personally returned Crys-

tal to Fairbanks, where he was served with copies of the charge against him and arraigned.

mission of a crime commenced outside the state is consummated inside the state, the defendant is liable to punishment in this state even though out of the state at the time of the commission of the crime charged, if the defendant consummated the crime through the intervention of an innocent or guilty agent, or by other means proceeding directly from the defendant.

Wheat reads this provision to be strictly territorial, requiring the commission of a criminal act within the confines of the state. Because the conduct for which he was convicted—unlawfully keeping his daughter in Arizona, away from the lawful custody of her mother in Alaska—occurred entirely outside the state, Wheat argues that his offense was not "committed" in Alaska and that jurisdiction never attached under AS 12.05.010.

We disagree with Wheat's interpretation of this statute. Although AS 12.05.010 is primarily territorial in its approach to criminal jurisdiction, its terms are broader than Wheat suggests. The plain language of the statute permits the assertion of jurisdiction over crimes "consummated inside the state." Wheat equates the word "consummate" with the commission of some criminal act—with some element of the requisite *actus reus* of the offense. In our view, however, the word "consummate" requires a broader reading. In its common meaning, consummation denotes completion. In many instances, of course, a crime is completed upon commission of the last element of the required *actus reus.* Where, however, a statute, in addition to prohibiting conduct, includes within its definition of the offense a specific result, then the crime is not completed until that result occurs. And if the prohibited result occurs in a place other than the conduct which occasioned it, the location of the result may fairly be deemed the place where the crime is "consummated."

Our commonsense interpretation of the word "consummate," comports with the meaning ordinarily ascribed to it in statutes dealing with criminal jurisdiction. Thus, in discussing various state statutory provisions that expand upon the strict territorial approach to criminal jurisdiction, one commentator has noted:

Some states have tried to reach interstate or international criminal transactions by special statutes. One type of statute penalizes persons who commence the commission of a crime outside the forum state but bring about its consummation within that state through either their own acts or the acts of an accomplice or innocent agent. On occasion, the same result is reached even without a special statute. The concept of consummation is such, however, that the impact of the criminal activity done elsewhere on some interest which the forum state desires to protect must be quite apparent. Indirect economic loss may not be enough.

George, *supra,* at 624 (footnotes omitted).

Our interpretation of AS 12.05.010 further comports with the view of that provision taken by the commentators to the Model Penal Code. The Model Penal Code's commentary has specifically included the Alaska jurisdictional statute in its list of state statutes that have enlarged upon the strict territorial theory by making the location of a proscribed result a basis for the assertion of criminal jurisdiction. *See* Model Penal Code commentary § 1.03 at 40 n. 11.

Notably, our interpretation of AS 12.05.-010 is also compatible with the substance of the Model Penal Code's approach to territorial applicability of criminal statutes. Model Penal Code § 1.03(1) provides, in relevant part:

Territorial Applicability.

(1) Except as otherwise provided in this Section, a person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if:

(a) either the conduct that is an element of the offense or the result that is

such an element occurs within this State....[2]

The provisions of section 1.03(1)(a) are virtually identical in scope to our reading of AS 12.05.010. We conclude, then, that, under AS 12.05.010, the commission of a crime is consummated in Alaska when the crime is defined to require a result as a necessary element and when that result occurs inside the state.

It remains to be considered whether, given our interpretation of AS 12.05.010, Wheat's offense was consummated in Alaska. AS 11.41.330(a) provides:

*Custodial interference in the second degree.* (a) A person commits the crime of custodial interference in the second degree if, being a relative of a child under 18 years of age or a relative of an incompetent person and knowing that the person has no legal right to do so, the person takes, entices, or keeps that child or incompetent person from a lawful custodian with intent to hold the child or incompetent person for a protracted period.

(b) Custodial interference in the second degree is a class A misdemeanor.

As previously noted, Wheat was specifically convicted under the provision of this statute that prohibits "keeping" a child from the lawful custody of another.

■ It is evident that this statutory provision requires, as an element of the offense that it describes, proof of a result that is separate from and additional to its *actus reus* component. In order to establish the offense charged, it was incumbent on the state to prove more than Wheat's knowing act of keeping Crystal in Arizona. The state was required to show that, as a direct result of Wheat's conduct, Crystal's mother was deprived of the lawful custody of her daughter—in other words, that Crystal was kept "from a lawful custodian." It is this prohibited result, rather than the proscribed conduct *per se*, that is the gra-

---

**2.** In its totality, Model Penal Code § 1.03 provides for criminal jurisdiction on a number of non-territorial grounds. The section provides, in full:

Territorial applicability.

(1) Except as otherwise provided in this Section, a person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if:

(a) either the conduct that is an element of the offense or the result that is such an element occurs within this State; or

(b) conduct occurring outside the State is sufficient under the law of this State to constitute an attempt to commit an offense within the State; or

(c) conduct occurring outside the State is sufficient under the law of this State to constitute a conspiracy to commit an offense within the State and an overt act in furtherance of such conspiracy occurs within the State; or

(d) conduct occurring within the State establishes complicity in the commission of, or an attempt, solicitation or conspiracy to commit, an offense in another jurisdiction that also is an offense under the law of this State; or

(e) the offense consists of the omission to perform a legal duty imposed by the law of this State with respect to domicile, residence or a relationship to a person, thing or transaction in the State; or

(f) the offense is based on a statute of this State that expressly prohibits conduct outside the State, when the conduct bears a reason-

able relation to a legitimate interest of this State and the actor knows or should know that his conduct is likely to affect that interest.

(2) Subsection (1)(a) does not apply when either causing a specified result or a purpose to cause or danger of causing such a result is an element of an offense and the result occurs or is designed or likely to occur only in another jurisdiction where the conduct charged would not constitute an offense, unless a legislative purpose plainly appears to declare the conduct criminal regardless of the place of the result.

(3) Subsection (1)(a) does not apply when causing a particular result is an element of an offense and the result is caused by conduct occurring outside the State that would not constitute an offense if the result had occurred there, unless the actor purposely or knowingly caused the result within the State.

(4) When the offense is homicide, either the death of the victim or the bodily impact causing death constitutes a "result" within the meaning of subsection (1)(a), and if the body of a homicide victim is found within the State, it is presumed that such result occurred within the State.

(5) This State includes the land and water and the air space above such land and water with respect to which the State has legislative jurisdiction.

vamen of the offense, and it is precisely this result that occurred in Alaska.[3]

We conclude that Wheat's offense was consummated within the state of Alaska. Wheat's conviction for custodial interference was therefore authorized under AS 12.05.010, despite the fact that Wheat did not actually engage in any prohibited conduct inside the state. We readily acknowledge that our conclusion is in conflict with the result reached in similar cases by several other courts. *See People v. Gerchberg*, 131 Cal.App.3d 618, 181 Cal.Rptr. 505 (1982); *State v. McCormick*, 273 N.W.2d 624 (Minn.1978); and *State v. Cochran*, 96 Idaho 862, 538 P.2d 791 (1975).

In *Gerchberg*, the California Court of Appeals declined to assert jurisdiction in a custodial interference case where the child's lawful custody was in California and the acts of interference occurred in New York. In reaching its conclusion, however, the *Gerchberg* court relied on a jurisdictional statute that differs materially from Alaska's. The California statute had previously been interpreted to require the commission of acts in California amounting to an attempt.[4]

In *McCormick*, the Minnesota Supreme Court refused to find jurisdiction in a custodial interference case involving conduct outside its borders. The jurisdictional statute involved was quite similar to AS 12.05.-010. The Minnesota court's holding, however, was based in part on the puzzling conclusion that assertion of jurisdiction in such a case might offend the Sixth Amendment of the United States Constitution; in support of this conclusion, the court relied on a single case decided by a New York court in 1855. *McCormick*, 273 N.W.2d at 625–26. Moreover, the court in *McCor-*

*mick* appears to have been concerned primarily with the inequity arising from the fact that its custodial interference statute, on its face, applied only to interference occurring outside the state. Had the defendant's acts been committed inside the state, he could have been convicted only of contempt, an offense punishable in Minnesota as a misdemeanor. Identical conduct occurring outside the state was classified as custodial interference and was punishable as a felony. *Id.* at 627–28.

In *Cochran*, the Idaho Supreme Court similarly refused to extend jurisdiction to a prosecution for kidnapping brought against a father who detained his children in Montana in violation of an Idaho custody decree. The basis for the *Cochran* court's conclusion, however, appears to have been a narrow one. The court held only that Idaho's venue statute did not confer jurisdiction over the offense. No consideration at all was given to Idaho Code § 19–302, which governs criminal jurisdiction and is similar to AS 12.05.010. Not long after deciding *Cochran*, however, the Idaho court relied expressly on the jurisdictional statute to uphold the conviction of an out-of-state resident for criminal non-support. *See State v. Shaw*, 96 Idaho 897, 539 P.2d 250 (1975).

In short, to the extent that differences in applicable statutory provisions do not distinguish *Gerchberg*, *McCormick* and *Cochran* from the present case, we find these decisions unpersuasive and decline to follow them.

In reaching this conclusion, we are not unmindful of the overriding need to assure fundamental fairness to individuals whose charges are based on conduct occurring

---

**3.** We note that an alternative basis for jurisdiction would be available in this case under § 1.03(1)(e) of the Model Penal Code (quoted *supra* note 2), which covers the omission to perform a legal duty with respect to a relationship to another person. In the analogous context of criminal non-support cases, some courts have found criminal jurisdiction, even without relying on jurisdictional provisions similar to § 1.03(1)(e), by holding that failure to pay child support constitutes a negative act that occurs within the state where the custodial spouse is domiciled. *See, e.g., State v. Klein*, 4 Wash.App. 736, 484 P.2d 455 (1971); *People v. Jones*, 257

Cal.App.2d 235, 64 Cal.Rptr. 622–23 (1967); *State v. Shaw*, 96 Idaho 897, 539 P.2d 250 (1975).

**4.** It is noteworthy, moreover, that the California case relied on in *Gerchberg, People v. Buffum*, 40 Cal.2d 709, 256 P.2d 317 (1953), has been persuasively criticized. *See* George, *Extra-Territorial Application of Penal Legislation*, 64 Mich. L.Rev. at 625–26 (1966); Currie, *Justice Traynor and the Conflict of A Laws*, 13 Stan.L.Rev. 747–49 (1961).

outside the state. We note, for example, that, under certain circumstances, the Model Penal Code specifically precludes prosecution based solely on the occurrence of a prohibited result within the forum state. In this regard, Model Penal Code § 1.03(3) provides:

> Subsection (1)(a) [providing for jurisdiction if either conduct or a prohibited result occurs within the forum state] does not apply when causing a particular result is an element of an offense and the result is caused by conduct occurring outside the State that would not constitute an offense if the result occurred there, unless the actor purposely or knowingly caused the result within the State.

For present purposes, however, it is sufficient to observe that no possibility of unfairness to Wheat will arise from the fact that his acts occurred in Arizona rather than in Alaska. The custody decree violated by Wheat was issued in Alaska, and it is clear that Alaska had homestate jurisdiction over the issue of custody under both the Uniform Child Custody Jurisdiction Act (UCCJA) (Alaska Statutes Title 25, Chapter 30) and the Parental Kidnapping Protection Act (*see* 28 U.S.C. 1738A). Since Arizona also subscribes to the UCCJA (*see* ARS § 8–401 *et seq.*, § 25–331), there can be little doubt that Arizona would be willing to give full faith and credit to the Alaska decree. Moreover, because Arizona's statute governing custodial interference is substantially similar to Alaska's, Wheat is foreclosed from asserting that his conduct was privileged under the laws of the state in which it occurred. *See* ARS § 13–1302. Finally, there is little possibility that Alaska's prosecution of Wheat will be viewed as offending Arizona's sovereign powers or as encroaching on the protections that state affords to its own citizens. Specifically, we note that Arizona has adopted a broad jurisdictional statute for criminal cases that is patterned upon § 1.03 of the Model Penal Code. *See* ARS § 13–108. Hence, it is plain that, in like circumstances, Arizona would consider itself to have criminal jurisdiction over acts occurring in Alaska.

Having held that Wheat's prosecution was authorized under AS 12.05.010, we conclude that his conviction must be AFFIRMED.