828 P.2d 1316

STATE of Idaho, Plaintiff–Respondent,

v.

Thomas Patrick DOYLE,
Defendant–Appellant.

No. 18852.

Supreme Court of Idaho,
Boise, January 1992 Term.

April 1, 1992.

Alan E. Trimming, Ada County Public Defender, Boise, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Michael J. Kane, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

BAKES, Chief Justice.

Defendant Thomas Doyle (Doyle) was charged by information with the crime of felony child custody interference pursuant to I.C. § 18–4506. Doyle filed a motion to dismiss for lack of subject matter jurisdiction on the basis that he committed no acts within the State of Idaho which would constitute a crime under Idaho law. The trial court denied the motion to dismiss. Doyle then entered a guilty plea to the charge

pursuant to a conditional plea agreement reserving the right to appeal the trial court's ruling on the jurisdictional issue. We affirm.

The following facts are not in dispute. Doyle and his former wife, Cindy, had a child, Shawn Doyle, and were subsequently married in Coeur d'Alene, Idaho, on May 28, 1985. The couple had differences, and Doyle moved to Vancouver, Washington. However, Cindy and Shawn continued to live in Boise, Idaho. On March 14, 1988, Doyle filed for divorce in the State of Idaho.

In April of 1988, Doyle and Cindy agreed to a temporary custody arrangement concerning Shawn. The terms of the agreement were that each parent would have custody of Shawn for two weeks, and that they would exchange custody every two weeks in Pendleton, Oregon. This agreement was approved and ordered by the Idaho court.

Doyle and Cindy exchanged custody of Shawn according to the agreement for approximately two months, and per their agreement, Cindy delivered Shawn to Doyle in Pendleton on July 2, 1988. However, on July 16, 1988, when Cindy returned to Pendleton to pick up Shawn, Doyle failed to show up and return Shawn to Cindy. On July 22, 1988, Cindy spoke on the telephone with Doyle who was at that time in Washington. However, after the call, Cindy could not locate either Doyle or Shawn for over fifteen months, until October 27, 1989.

On August 19, 1988, a complaint against Doyle was filed with the Ada County District Court for the crime of felony child custody interference and a warrant was issued for his arrest.

In September, 1988, the divorce became final, apparently by default since Doyle did not appear before the court, and Cindy was awarded sole and exclusive custody of Shawn.

In October, 1989, Doyle was arrested in Lexington, Kentucky, on a fugitive warrant for felony theft committed in the State of Iowa. Cindy was contacted by the Lexington authorities and on October 27, 1989, arrived in Lexington and took custody of Shawn.

Doyle was returned to Idaho for prosecution on the charge of felony child custody interference. He filed a motion to dismiss for lack of jurisdiction. Doyle argued that because neither he nor Cindy nor Shawn were in Idaho when any act of withholding may have occurred, such act must have occurred in either the State of Oregon or the State of Washington. Therefore, under I.C. § 19–301, the State of Idaho was allegedly without jurisdiction to prosecute the action.[1] The trial court denied Doyle's motion to dismiss, finding that the state did have jurisdiction under I.C. § 19–302 because the crime was consummated within Idaho.[2]

Doyle then filed a motion for permission to appeal from the trial court's interlocutory order denying his motion to dismiss. This motion was also denied by the trial court. Doyle subsequently pled guilty to felony child custody interference, reserving the right to appeal the trial court's ruling on the jurisdictional issue. On July 30, 1990, Doyle was sentenced to the Idaho Department of Correction for a term of not less than one and one-half years nor more than five years, with the trial court retain-

---

1. **19–301. All offenders liable to punishment.**—(1) Jurisdiction—venue. Every person is liable to punishment by the laws of this state, for a public offense committed by him therein, except where it is by law cognizable exclusively in the courts of the United States. Evidence that a prosecutable act was committed within the state of Idaho is a jurisdictional requisite, and proof of such must be shown beyond a reasonable doubt.

2. **19–302. Offenses commenced without the state.**—When the commission of a public offense, commenced without the state is consummated within its boundaries, the defendant is liable to punishment therefor in this state, though he was out of the state at the time of the commission of the offense charged. If he consummated it in this state through the intervention of an innocent or guilty agent, or any other means proceeding directly from himself, in such case the venue is in the county in which the offense is consummated.

ing jurisdiction for 120 days. It is from this judgment that appeal is taken.

■ We first note our standard of review. Subject matter jurisdiction presents a question of law over which we exercise free review. *Hanson v. State*, 121 Idaho 507, 826 P.2d 468 (1992); *Gage v. Harris*, 119 Idaho 451, 807 P.2d 1289 (Ct.App.1991).

At common law, a state's jurisdiction over crimes was limited by the notion that each crime had only one situs and that only the state of the situs had jurisdiction. W. LaFave & A. Scott, Substantive Criminal Law, Vol. I, § 2.9 at 180 (1986). Generally, if the crime is defined in such terms, the situs of the crime is the place of the act or omission, and if the definition of the crime includes a particular result, then the situs is the place of the result. *Id.* at 181.

However, many states have enacted statutes which extend the limits of traditional territorial jurisdiction. As noted by Professor LaFave:

> Without departing from the territorial principle of jurisdiction—some conduct or result must still occur within the state— a number of states have by statute enlarged their criminal jurisdiction by making other local conduct or results (other than the one particular act or omission or result which the common law considered vital for the determination of the situs of the crime) the basis for jurisdiction. If such conduct or its effects happen within the state, that state is given jurisdiction.

*Id.* at 186 (footnotes omitted). Under these types of statutes, a state will have jurisdiction to prosecute a crime if any element of the crime occurred within its boundaries.

Reflecting this approach, I.C. § 18–202 sets forth Idaho's territorial jurisdiction as follows:

> **Territorial jurisdiction over accused persons liable to punishment.**—The following persons are liable to punishment under the laws of this state:
>
> 1. All persons who commit, in whole or in part, any crime within this state.
> 2. All who commit larceny or robbery out of this state, and bring to, or are found with the property stolen, in this state.
> 3. All who, being out of this state, cause or aid, advise or encourage, another person to commit a crime within this state and are afterwards found therein.

This Court has stated that it must be inferred from the language of Subsection 1. of the above statute that "the legislature intended to punish any person who should commit any portion of a crime within this state to the same extent and in the same manner as though all of the acts which constitute the crime had been committed here." *State v. Sheehan*, 33 Idaho 553, 561–62, 196 P. 532, 534 (1921). *See also State v. Cochran*, 96 Idaho 862, 864, 538 P.2d 791, 793 (1975) ("The State having failed to prove that the alleged kidnapping occurred in Kootenai County, Idaho, jurisdiction did not exist in the State of Idaho to try this case."); *State v. Chapman*, 108 Idaho 841, 843, 702 P.2d 879, 881 (Ct.App. 1985) ("Where the element of intent to keep or conceal the child was committed within Idaho, the defendant may be charged with kidnapping in Idaho, even though the actual concealment occurred outside the state.").

A further definition of an Idaho court's territorial jurisdiction can be found in I.C. § 19–301. This statute was amended in 1986 to include the language that "[e]vidence that a prosecutable act was committed within the state of Idaho is a jurisdictional requisite, and proof of such must be shown beyond a reasonable doubt." Although the term "prosecutable act" has not been defined by the legislature or this Court, it would appear that, to be consistent with I.C. § 18–202, "prosecutable act" means any essential element of the crime.

A third statute, I.C. § 19–302, allows a defendant to be liable for punishment within Idaho "when the commission of a public offense, commenced without the state is consummated within its boundaries...." States with statutes similar to I.C. § 19–302 have interpreted them to mean that jurisdiction will exist if the conduct performed outside the state caused a criminal

result or effect within the state.[3] *See Wheat v. State,* 734 P.2d 1007, 1010 (Alaska Ct.App.1987) ("[T]he commission of a crime is consummated in Alaska when the crime is defined to require a result as a necessary element and when that result occurs inside the state."); *State v. Duffy,* 124 Ariz. 267, 603 P.2d 538 (Ct.App.1979) (Fraudulent transaction was consummated within Arizona when property was brought into Arizona as a direct result of fraudulent misrepresentations in Indiana); *State v. Winckler,* 260 N.W.2d 356 (S.D.1977) (The crime of assault is consummated where the desired effect takes place). A similar use of I.C. § 19–302 has been made by this Court in *State v. Shaw,* 96 Idaho 897, 539 P.2d 250 (1975), which found that the defendant was subject to the jurisdiction of the trial court for failure to pay child support for his children living in Idaho despite the fact that he had never been in Idaho.

■ However, given the language in I.C. § 18–202 and I.C. § 19–301 requiring that the crime must occur "in whole or in part" within the state, or that some "prosecutable act" must have been committed within the state, the language in I.C. § 19–302 must be interpreted to mean that the result of the crime must be an essential element of the offense before the result can be construed to have been "consummated" within Idaho. Any other interpretation would create a direct conflict between I.C. §§ 18–202, 19–301 and § 19–302. *See Union Pacific R. Co. v. Board of Tax Appeals,* 103 Idaho 808, 811, 654 P.2d 901, 904 (1982) ("Statutes which are *in pari materia* are to be construed together to the end that legislative intent will be effected.");

*State v. Paul,* 118 Idaho 717, 800 P.2d 113 (Ct.App.1990).

Such an interpretation is in harmony with the general rule that "the requisite elements of the completed crime may be committed in different jurisdictions, and in such cases any state in which an essential part of the crime is committed may take jurisdiction." [4] 21 Am.Jur.2d Criminal Law § 345 at 598 (1981); *accord Findley v. State,* 307 Ark. 53, 818 S.W.2d 242 (1991); *State v. Lane,* 112 Wash.2d 464, 771 P.2d 1150 (1989); *State v. Schaaf,* 234 Neb. 144, 449 N.W.2d 762 (1989); *State v. Poland,* 132 Ariz. 269, 645 P.2d 784 (1982). This general rule is also acknowledged in the Model Penal Code which states that a person can be prosecuted if "either the conduct which is an element of the offense or the result which is an element occurs within the State." Model Penal Code (U.L.A.) § 1.03(1)(a).

■ Given this statutory structure, an Idaho court will have subject matter jurisdiction over a crime if any essential element of the crime, including the result, occurs within Idaho. Therefore, in this case, we must determine the essential elements of the crime of child custody interference as it is defined in I.C. § 18–4506, and whether any such element occurred in Idaho.

■ First, regarding the elements of child custody interference. The crime of child custody interference is defined in I.C. § 18–4506(1) as:

A person commits child custody interference if the person ... intentionally and without lawful authority:

**3.** Other states have interpreted statutes similar to I.C. § 18–202 as allowing jurisdiction when the effect or result occurs within the state, *see State v. Kills on Top,* 243 Mont. 56, 793 P.2d 1273 (1990); *People v. Caruso,* 119 Ill.2d 376, 116 Ill.Dec. 548, 519 N.E.2d 440 (1987), and at least one state has reached a similar conclusion without any statute which permits the exercise of jurisdiction when extraterritorial conduct causes a result in the state. *See Rios v. State,* 733 P.2d 242 (Wyo.1987) (citing *Strassheim v. Daily,* 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911)). However, because the trial court in

this case based its decision on I.C. § 19–302, we need not speculate on the limits of Idaho's territorial jurisdiction absent I.C. § 19–302.

**4.** Although not relying on any specific statute, the Idaho Court of Appeals, in *Maxfield v. State,* 108 Idaho 493, 700 P.2d 115 (1985) held that "the venue of a prosecution for homicide is proper either in the county where the cause of death is inflicted or in the county where death ensues. [Citation omitted]. Maxfield thus cannot prevail on his contention that the district court lacked jurisdiction...." 108 Idaho at 498, 700 P.2d at 120.

(a) *Takes*, entices away, *keeps* or *withholds* any minor child from a parent or another person or institution having custody, joint custody, visitation or other parental rights,.... (Emphasis added.)

Under this definition, the elements of child custody interference include: (1) an intentional (2) taking, enticing away, keeping, or withholding which (3) unlawfully deprives the custodian of custody. However, there exists a distinction between the type of "acts" which will result in the unlawful deprivation of custody. First, the deprivation can be caused if the defendant takes or entices away the child from the child's lawful custodian. These type of acts are affirmative acts which the defendant makes on his own accord. The crime of child custody interference as defined by these acts is a crime of commission.

Second, the deprivation can be caused if the defendant keeps or withholds the child from the child's lawful custodian. Such a definition implies that the defendant had lawful custody at one point in time, but at the expiration of that custodial period did not return custody to the lawful custodian. Since in this situation the defendant is usually required to act by way of a court order, these types of acts are not affirmative acts. The crime as defined by this duty to act is a crime of omission.[5]

In this case, Doyle did not take or entice Shawn away from Cindy. However, he did keep or withhold custody of Shawn from Cindy in violation of the temporary custody agreement. Therefore, under the facts of this case, we are involved with the crime of child custody interference as it is defined as an omission. Under the temporary custody agreement, Doyle had a duty to return custody of Shawn to Cindy on July 16, 1988. His failure to return Shawn deprived Cindy of her custodial rights and

exposed him to criminal prosecution under I.C. § 18–4506(1).

Next, we must determine if any element of the crime of child custody interference occurred within Idaho. Regarding the first element, Doyle's intent, since there was never any evidence that Doyle entered Idaho at anytime prior or after he took custody of Shawn on July 2, 1988, or when he was to return Shawn to Cindy on July 16, 1988, we cannot find that he formed an intent to withhold Shawn within the State of Idaho. *But cf. State v. Chapman*, 108 Idaho 841, 702 P.2d 879 (Ct.App.1985).

■ Regarding the second element, the keeping or withholding, a comparison to the crime of nonsupport is useful. Nonsupport is a crime of omission in which the state where the duty is required to be performed has jurisdiction.

"If there is a duty to act, failure to perform that duty is, for the purpose of jurisdiction, tantamount to an act." *Thus the state wherein the act is legally required to be performed has jurisdiction over a crime based on nonaction.* Thus the state wherein the act is legally required to be performed has jurisdiction over the crime based on nonaction. This means, for example, that the crime of non-support of the family is committed where the duty to support should be discharged—where the family lives.

W. LaFave & A. Scott at 185 (citing Restatement of Conflict of Laws § 70, comment a (1934)) (footnotes omitted) (emphasis added). Because we find that the withholding of the child from the custodial parent in violation of a court order is no different than the withholding of support from a family in violation of a court order, we conclude that the keeping or withholding occurs, for purposes of jurisdiction, where the defendant is required to return the child to the custodial parent.

---

5. In *State v. Cochran*, 96 Idaho 862, 538 P.2d 791 (1975), this Court treated the "continued retention of the children" as an affirmative act which must occur within the State of Idaho for jurisdictional purposes. However, the defendant in *Cochran* was charged with kidnapping, which is committed against the child, rather than the crime of child custody interference, which is committed against the other parent. *See State v. McCormick*, 273 N.W.2d 624 (Minn. 1978). As noted in the text, we find the crime of child custody interference to be more closely related to the crime of nonsupport, a crime of omission, rather than the crime of kidnapping. Therefore, the above language in *Cochran* has no bearing on our decision in this case.

In this case, Doyle was required to return Shawn to Cindy in Pendleton, Oregon. As such, he maintains that the second element of the crime, the keeping or withholding, occurred in Oregon. However, as noted by one commentator, "The duty of support is considered to follow the dependent, so that if no support is forthcoming the husband or parent can be convicted even though he has never been in the forum state." George, Extraterritorial Application of Penal Legislation, 64 Mich.L.Rev. 609, 623, (1966); *accord State v. Klien*, 4 Wash.App. 736, 484 P.2d 455 (1971); *State v. Warrick*, 176 Neb. 211, 125 N.W.2d 545 (1964). Therefore, continuing the comparison with the nonsupport cases, the duty to return the child to the custodial parent follows the custodial parent. Therefore, when Cindy returned to Idaho, Doyle's duty to return Shawn followed her and gave the Idaho court jurisdiction over his withholding in violation of that duty.

Not only did the withholding occur within Idaho, but the result occurred in Idaho as well. *See State v. Shaw*, 96 Idaho 897, 539 P.2d 250 (1975). States which have addressed this issue have reached a similar conclusion. *Wheat v. State*, 734 P.2d 1007, 1010 (Alaska Ct.App.1987) ("[T]he commission of a crime is consummated in Alaska when the crime is defined to require a result as a necessary element and when that result occurs inside the state."); *People v. Caruso*, 119 Ill.2d 376, 116 Ill.Dec. 548, 519 N.E.2d 440, 443 (1987) ("[J]urisdiction is based on the State's interest in the performance of the duty imposed."); *Rios v. State*, 733 P.2d 242, 250 (Wyo.1987) ("[T]he failure to return the child had its effect in the State of Wyoming. The adverse result occurred here, and there is no substantial distinction from the nonsupport cases...."); *Roberts v. State*, 619 S.W.2d 161, 164 (Tex.Crim.App.1981) ("The act of appellant retaining [the child] in Colorado *resulted* in [a] violation of a valid judgment of a Texas court.... For these reasons, Texas has jurisdiction of the subject matter of this cause....").

Accordingly, we conclude that the second and third elements of the crime of child custody interference, the keeping or with-

holding and the deprivation of the custodial rights, occurred in Idaho. Therefore, under I.C. §§ 18–202, 19–301 and 19–302, the state had jurisdiction over the crime.

On appeal Doyle argued that I.C. § 18–4506(3) is unconstitutional. However, because he failed to raise the argument in the lower court we do not address the issue. *Sanchez v. Arave*, 120 Idaho 321, 815 P.2d 1061 (1991) (The constitutionality of a statute will not be considered for the first time on appeal); *State v. Martin*, 119 Idaho 577, 808 P.2d 1322 (1991). Affirmed.

JOHNSON and McDEVITT, JJ., concur.

BOYLE, J., fully concurred prior to his resignation on March 31, 1992.

BISTLINE, Justice, dissenting.

The conviction should be reversed. The underlying facts and circumstances are not in dispute and are correctly portrayed in the Chief Justice's majority opinion, and, hence, there is no reason for repetition.

As noted by the majority, this Court has stated that it must be inferred from the language of subsection 1 of I.C. § 18–202 that "the legislature intended to punish any person who should commit any portion of a crime within this state to the same extent and in the same manner as though all of the acts which constitute the crime had been committed here." *State v. Sheehan*, 33 Idaho 553, 561–62, 196 P. 532, 534 (1921).

More recently, two cases have been decided which concur with the rule set forth in *Sheehan*. In the first case, *State v. Cochran*, 96 Idaho 862, 538 P.2d 791 (1975), this Court found that no jurisdiction existed over a defendant charged with kidnapping because the alleged violation, the continued retention of the children, occurred outside the state of Idaho. However, in *State v. Chapman*, 108 Idaho 841, 702 P.2d 879 (Ct.App.1985), the Court of Appeals distinguished *Cochran* on the basis that, in *Chapman*, an element of the crime of kidnapping did occur within Idaho. The special court panel comprised of Justice Bakes acting as Chief Judge, Justice McFadden,

and Judge Towles, Pro Tem., in an opinion authored by Justice Bakes, stated:

> However, in the present case there was substantial evidence produced by testimony at the preliminary hearing and made in an offer of proof to the district court that the essential element of 'intent to keep or conceal it from its parent, guardian or other person having lawful care of control thereof,' I.C. § 18–4501, existed while the defendant was within the jurisdiction of Idaho. The evidence introduced and offered indicated that after defendant lost on the temporary custody hearing, he began making plans and preparations in Idaho to steal away the child. He wound up his business affairs, obtained passports for himself and the child, stored away his property, and vacated his residence secretly without notice. Where the element of intent to keep or conceal the child was committed [sic, conceived] within Idaho, the defendant may be charged with kidnapping in Idaho, even though the actual concealment occurred outside the state.

*State v. Chapman,* 108 Idaho at 843, 702 P.2d at 881. Although neither the *Chapman* nor *Cochran* decisions specifically addressed I.C. § 18–202, given the result of both cases in light of that statute and its interpretation in *Sheehan,* it is clear that jurisdiction will exist in Idaho *only if an essential element of the crime occurred within Idaho. Accord State v. Kills on Top,* 243 Mont. 56, 793 P.2d 1273 (1990); *State v. Lane,* 112 Wash.2d 464, 771 P.2d 1150 (1989); *Ross v. State,* 411 So.2d 247 (Fla.Dist.Ct.App.1982).

Accordingly, we must determine whether Thomas committed any of the essential elements of the crime of child custody interference within Idaho. The crime of child custody interference is defined in I.C. § 18–4506(1) as:

> A person commits child custody interference if the person ... intentionally and without lawful authority:
>
> (a) *Takes,* entices away, *keeps* or *withholds* any minor child from a parent or another person or institution having custody, joint custody, visitation or other parental rights,.... (Emphasis added.)

In this case, by withholding the minor child Shawn from Cindy, in violation of the joint custody arrangement, the defendant Thomas may have committed elements of the crime of child custody interference. *However, neither the defendant, nor any agent of the defendant, committed any act of withholding within the state of Idaho.* According to the temporary custody arrangement, Cindy was to have custody of Shawn for a two week period beginning July 16, 1988. By not turning Shawn over to Cindy on July 16, 1988, Thomas unlawfully deprived Cindy of her custodial rights in violation of I.C. § 18–4506. However, since Thomas was to exchange custody of Shawn with Cindy in Pendleton, Oregon, the place where Cindy was deprived of her custody of Shawn was Pendleton, Oregon.

Therefore, none of the essential elements of the crime occurred within the state of Idaho, and the defendant's conduct did not come within the provision of I.C. § 18–4506(1) and I.C. §§ 18–202 and 19–301. *See State v. Cochran,* 96 Idaho 862, 864, 538 P.2d 791, 793 (1975) ("The State having failed to prove that the alleged kidnapping occurred in Kootenai County, Idaho, jurisdiction did not exist in the state of Idaho to try this case."); *State v. Chapman,* 108 Idaho 841, 843, 702 P.2d 879, 881 (Ct.App. 1985) ("Where the element of intent to keep or conceal the child was committed within Idaho, the defendant may be charged with kidnapping in Idaho, even though the actual concealment occurred outside the state."); *People v. Gerchberg,* 131 Cal. App.3d 618, 181 Cal.Rptr. 505 (1982).

The facts in this case are distinguishable from those in *Wheat v. State,* 734 P.2d 1007 (Alaska 1987), a case cited by the State. In that case, the child was kept from her mother who was in Alaska at the time of the keeping.[6] The Alaska Court

---

6. AS 11.41.330 states that custodial interference occurs when, "A person ... being a relative of a child under 18 years of age or a relative of an incompetent person and knowing that the per-

found jurisdiction under a statute similar to I.C. § 19–302 on the basis that "[the child] was kept 'from a lawful custodian.' It is this prohibited result ... that is the gravamen of the offense, *and it is precisely this result that occurred in Alaska.*" 734 P.2d at 1010–11 (emphasis added). However, as mentioned above, the result in this case, the deprivation of Cindy's custodial rights, did not occur within Idaho. Therefore, on the specific facts of this case, where the custody arrangement provided for the child to be delivered to the defendant at Pendleton, Oregon, outside the state of Idaho, and the defendant to re-deliver the child to the mother also outside the state of Idaho, the defendant did not consummate the crime of the child custody interference within the state of Idaho when, remaining outside Idaho, he withheld the child from his lawful custodian.

Moreover, I do not find that the out-of-state cases cited by the majority compel a different result. Where Idaho authority is available, and is controlling, there is no need to look elsewhere, other than to satisfy curiosity as to what may have happened elsewhere. The states of Alaska and California, for example, on almost identical circumstances reached diametrically opposite results. In *People v. Gerchberg*, 131 Cal. App.3d 618, 181 Cal.Rptr. 505, the California Court of Appeals said:

> It has long been the settled law of this state that ... California cannot punish for conduct taking place outside of California unless the defendant has, within this state, committed acts which amount to at least an attempt to commit a crime punishable under California law.
> ....
> At the most, his acts in sending for the children were consistent only with an intent to recognize Susan's custodial rights by returning the children to her after the agreed visitation period was over. That later, in New York, he changed his intent and did not return the children cannot subject him to prosecution in a California criminal court.

son has no legal right to do so, the person takes, entices, or *keeps* that child or incompetent person from a lawful custodian with intent to hold

....

> Whatever the effect of the Uniform Child Custody Jurisdiction Act (a matter which we need not here explore) it does not confer on California jurisdiction to punish a man criminally for an intent formed outside California and followed by conduct fully outside this state.

131 Cal.App.3d at 620–21, 181 Cal.Rptr. at 506–07.

The Alaska Court of Appeals in *Wheat v. State*, 734 P.2d 1007 (Alaska 1987), cited Idaho's *Cochran* case and in turn *State v. Shaw*, 96 Idaho 897, 539 P.2d 250 (1975), but made no mention whatever of the blue ribbon opinion in *State v. Chapman*. In concluding its opinion, the Alaska court stated that, "to the extent that differences in applicable statutory provisions do not distinguish *Gerchberg*, *McCormick*, and *Cochran* from the present case, we find those decisions unpersuasive and decline to follow them." 734 P.2d at 1012. It went on for a short piece only to add: "It is plain that, in these circumstances, Arizona would consider itself to have criminal jurisdiction over acts occurring in Alaska." 734 P.2d at 1012.

It is much doubted that this Court has heretofore, or will hereafter, paint with so broad a brush.

the child or incompetent person for a protracted period." (Emphasis added).